**Winifred SPRING, Plaintiff–Appellant,**

v.

**SHEBOYGAN AREA SCHOOL DISTRICT, Defendant–Appellee.**

No. 88–1607.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1988.

Decided Jan. 17, 1989.

As Corrected Jan. 20, 1989.

---

Daphne Webb, Stafford Rosenbaum Rieser & Hansen, Madison, Wis., for plaintiff-appellant.

William Sosnay, Mulcahy & Wherry S.C., Milwaukee, Wis., for defendant-appellee.

Before BAUER, Chief Judge, WOOD, JR. and KANNE, Circuit Judges.

BAUER, Chief Judge.

Plaintiff-appellant Winifred Spring appeals from the district court's grant of summary judgment to defendant-appellee Sheboygan Area School District ("the District") on her claims brought pursuant to the Age Discrimination in Employment Act ("ADEA"). She contends that the district court erred in concluding that no genuine issues of material fact existed as to whether the District discriminated against her on the basis of her age or whether the District constructively discharged her. We affirm.

Spring began working for the District as a teacher in 1957 and, in 1972, became the principal of Grant Elementary School. The District's Director of Administration, Jerald Schoenike, who evaluated Spring's work performance, regarded her as a fine, caring, and very hardworking principal, if a little too sensitive. During the 1981–82 school year, Schoenike asked Spring, who was then over 65, about her retirement plans. Spring replied that she had no plans to retire. Schoenike also discussed retirement with three other principals who were nearing retirement age. Although Schoenike did not ask employees under forty about retirement, he did discuss with them their career plans. In 1982, Dr. George Longo became the District's new Superintendent of Schools. In November 1982, Longo asked Spring whether she planned to retire and if she would like to know what

her benefits would be if she took early retirement.

Soon after taking command of the District, Longo developed a district-wide reorganization plan. Spring learned of the plan during her regular quarterly performance evaluation meeting with Longo and Schoenike on March 14, 1983, when she was told that she could be transferred or reassigned pursuant to the reorganization. On March 23, 1983, Longo presented his reorganization plan to the School Board. Under Longo's plan, Spring would, beginning in the 1983–84 school year, assume a dual principalship of the Lincoln–Erdman and Jackson elementary schools within the district. Spring also would receive a new two-year employment contract and a merit pay increase.

Before presenting his reorganization plan to the School Board, Longo asked Schoenike if he knew whether Spring had made plans to retire. According to Schoenike, if he had known that Spring would retire in one year, he would have recommended against transferring her to the Lincoln–Erdman/Jackson position. According to Longo, when he made the decision to transfer Spring, he took into account the perception of some persons that there were communication and discipline problems at the Grant school, that the prior superintendent did not give Spring a merit raise, and that Spring always seemed very busy and under stress.

On July 23, 1983, Spring resigned as principal after visiting the Lincoln–Erdman and Jackson schools. According to Spring, Longo and the District wished her gone, and her new assignment was a public humiliation. Spring filed this action on March 10, 1986, nearly three years later, alleging that the District discriminated against her on the basis of age and constructively discharged her when it reassigned her to the new dual principalship. The District filed a motion for summary judgment, arguing that Spring presented no genuine issue of material fact that she was discriminated against on the basis of age or constructively discharged, and that Spring's action was time barred under 29 U.S.C. §§ 626(d) and

(e), and 255(a). On February 24 1988, the district court granted the District's motion, holding that Spring had not been the victim of an adverse employment action and that she failed to raise an issue of fact that her working conditions were so intolerable that she was constructively discharged. Because the court found that Spring could not make out a claim of age discrimination in the first instance, it did not address the question whether the complaint was timely filed under a willful violation theory. This is Spring's appeal from the district court's grant of summary judgment to the District on her age discrimination claims.

The district court, however, committed no error. The ADEA outlaws discrimination in the workplace on the basis of age, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed. 2d 523 (1985), not changes in duties or working conditions that cause no materially significant disadvantage to an older employee. As one district court aptly put it, "the [ADEA] is not intended to prevent employers from changing the job responsibilities of their 40 to [70] year old employees. Neither is the Act intended to give 40 to [70] year old employees the right to walk out and sue their employer because they dislike their changed job responsibilities." *Frazer v. KFC National Management Co.*, 491 F.Supp. 1099, 1105 (M.D.Ga.1980). To establish a violation of the ADEA, therefore, a plaintiff must prove that she suffered a *materially adverse* change in the terms or conditions of her employment because of her employer's discriminatory conduct. *Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1424 (7th Cir.1986); *see* 29 U.S. C. § 621(a)(1) (stressing that the ADEA was designed to promote the interests of older workers who had lost jobs or suffered similar disadvantages in their efforts to retain employment).

The district court found that the record before it failed to present a genuine issue of fact that the District's reassignment of Spring to the dual principalship of Lincoln–Erdman and Jackson was a materially adverse change in the terms or conditions of her employment. In doing so, the

court noted that other principals had had dual building assignments in the past; that other principals also were reassigned under the district-wide reorganization; that Longo cited legitimate business reasons for transferring Spring from the Grant elementary school; that the socio-economic backgrounds of the students at Lincoln–Erdman and Jackson were upper middle class, whereas at Grant the students' backgrounds were more diverse; that the Lincoln and Jackson schools had no special programs, whereas Grant had a program for emotionally disturbed children; that the number of students at both Lincoln–Erdman and Jackson was less than or equal to the number of students at Grant; that the staffs of the schools were of a relatively equal size; and, last but not least, that Spring received a new two-year employment contract and a merit pay increase. According to the district court, the only negative aspect of Spring's new job assignment was that she would have to travel farther from home to get to work, and she would be reimbursed for that travel.

Spring argues that the court drew improper inferences in concluding that she suffered no materially adverse change as a result of her reassignment. According to Spring, for each fact noted by the district court, she can present "countervailing facts and arguments which would support a contrary inference that the reassignment *was* adverse." She points out, for example, that there was only one other dual building assignment in the reorganization plan, that the trend in the District was away from dual building assignments since there were four in 1980–81 and only two in 1983–84; that because of the "duplication of responsibilities with two buildings," her administrative tasks would increase by about 50 percent and that driving time between the two schools would cut into time available to perform these tasks; and that the public perceived the transfer as a "nudge towards retirement."

■ Unfortunately for Spring, her countervailing facts and arguments are not strong stuff, certainly not strong enough to support an inference that she suffered a materially adverse change in the terms and conditions of her employment for purposes of establishing an ADEA violation. To begin with, public perceptions were not a term or condition of Spring's employment. Moreover, Spring's argument concerning the amount of time she would need to spend on administrative tasks in her reassigned position is somewhat dubious considering she never worked a day in that position. Finally, the trend away from dual-building assignments she noted is not much of a trend. Although we must, for purposes of summary judgment review, draw any inferences from the record in favor of Spring, we are not required to draw every conceivable inference from the record. We need draw only reasonable ones. *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986).

In our view, the district court, after carefully reviewing the evidence in the record, came to the only reasonable conclusion— that Spring's reassignment was not a materially adverse change in the terms or conditions of her employment for purposes of establishing a violation of the ADEA. The reassignment to Lincoln–Erdman and Jackson was hardly a discharge or demotion, it was another principalship for more pay under a longer-term employment contract. This does not strike us as adverse, and Spring cites no authority that convinces us otherwise. And we cannot help but note Spring's response to the question "Are you saying that the [dual principalship] was a lesser job than you had as principal at Grant?" Spring's answer: "I don't think it was a lesser job."

In short, we conclude that the district court did not err in holding that no genuine issue of fact existed that the District discriminated against Spring on the basis of her age. Having made this determination, we need not discuss Spring's additional claim that she was constructively discharged as a result of her reassignment— clearly that is not the case—or the District's contention that this action is time barred.

AFFIRMED.