Ernest L. CRADY, Plaintiff–Appellant,

v.

**LIBERTY NATIONAL BANK AND TRUST COMPANY OF INDIANA, Steve Richards, Branch Administrator, and Jack Ragland, Chief Executive Officer, Defendants–Appellees.**

No. 92–2008.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1993.

Decided May 10, 1993.

Mitchele J. Harlan, Harris, Harlan & Merideth, Jeffersonville, IN (argued), for plaintiff-appellant.

Douglas W. Langdon, David W. Crumbo, Mary Ann Guenther, Brown, Todd & Heyburn, New Albany, IN, Michael A. Luvisi (argued), Donna King Perry, Brown, Todd & Heyburn, Louisville, KY, for defendants-appellees.

Before BAUER, Chief Judge, and POSNER and COFFEY, Circuit Judges.

BAUER, Chief Judge.

Liberty National Bank and Trust Company of Indiana and Ernest Crady dispute the reasons for Crady's discharge from Liberty. Crady sued Liberty pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 ("ADEA"). Liberty says Crady abandoned his job, forcing Liberty to discharge him. The district court granted Liberty's motion for summary judgment. We affirm.

## I.

We review a grant of summary judgment in the light most favorable to the nonmoving party; here, Ernest Crady. Liberty hired Crady in May 1987 when Crady was 53 years old. Crady asserts that he was hired as an assistant vice president and manager of Liberty's Sellersburg branch, with the promise of a future salary increase and a title promotion. About a year later, Steve Richards, a bank executive at the appellee's Charleston branch, told Crady that he would be transferred to the Charleston branch for a loan officer position managing collections. Liberty asserts that Crady's transfer was the result of his difficulty in managing employees. The transfer did not involve a wage reduction, but the position was not as an assistant vice president. Crady felt it was a demotion and was unhappy about the change.

Before the transfer decision was final, Crady was involved in a dispute with one of the employees on July 29, 1988. He became ill immediately following the altercation and left work to see his doctor. His doctor was not in, so Crady went home. Shortly after he arrived home, Crady and Richards spoke on the telephone, at which time Richards told Crady that the transfer to the Charleston branch would be effective on August 1. After the conversation, Crady went to the emergency room and was admitted to the hospital for two days.

On August 10, 1988, Richards wrote Crady a one sentence note that said "Dear Ernie: Please have your physician drop us a small written notice concerning your illness for our files. Sincerely, Steve" (R. 30, Exh. B). On the bottom of the note, Crady authorized his physician to release a statement to Liberty. Subsequently, Liberty received the hospital discharge notice that reflected Crady's diagnosis and condition. On September 19, 1988, Richards called Crady's doctor and asked when Crady might be able to return to work. Crady's doctor sent Richards a note that stated: "This specified in our talk this a.m., Ernest Crady feels able to return to his previous job upon request." (R. 30, Exh. D). The doctor did not offer his opinion about whether Crady was medically incapable of performing the collections officer position.

Richards sent another letter on October 20, 1988, telling Crady that the loan officer position was being held open for him and asking him to provide a doctor's certification that he could not perform the duties of that position at that time. Richards assured Crady that the position would be held as long as possible, but warned him that it could not remain vacant indefinitely. Crady did not respond to the letter. On November 3, 1988, Crady's lawyer spoke to Liberty's personnel director. After the conversation, Crady's attorney told Crady of the possibility that Liberty would recommend a doctor to examine Crady for an independent opinion as to whether he was fit to return to work. No one ever contacted Crady about a possible doctor's examination.

On November 7, 1988, Richards sent a third letter to Crady explaining that Liberty could not hold Crady's job open indefinitely. He wrote that if Crady did not contact him by November 30, 1988, Richards could only assume that Crady had abandoned his employment with Liberty. This letter elicited a biting response. Crady's attorney sent a letter warning Richards against writing Crady directly. The attorney accused Richards of making an "end run" around him. The attorney did not, however, respond to Liberty's request for medical documentation of Crady's inability to return to work.

Despite the deadline, November 30 came and went without Crady informing Liberty about whether he intended to return to work. True to his word, Richards wrote Crady a letter telling him that because he had not responded, Liberty interpreted his inaction as abandonment of his employment and therefore his employment was officially terminated. Liberty's attorney sent a similar letter to Crady's attorney informing him of the termination. On December 1, Crady's attorney wrote Liberty and asked that Crady be reinstated. He also informed Liberty that he believed Crady's termination was retaliatory because the personnel director had allegedly been told that Crady was going to initiate an Equal Employment Opportunity Commission ("EEOC") action. He enclosed two physicians' statements concerning Crady's condition. One stated simply "It is not recommended that Ernest Crady be placed in a position of increased stress." (R. 30, Exh. I). The other was a summary of Crady's complaints and medical history, but did not offer a diagnosis or employment recommendation.

Despite further correspondence, Crady was not reinstated. Crady ultimately filed a complaint with the EEOC. He alleged he was a victim of age discrimination and retaliatory discharge. The EEOC did not agree. Crady properly exhausted his administrative remedies and could (and did) sue Liberty for violations of the Age Discrimination in Employment Act. He did not argue his retaliation claim to this court.

## II.

■ We review a district court's grant of summary judgment *de novo,* considering the facts in the light most favorable to the nonmoving party and determining whether a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this case we must decide whether the undisputed facts show that Crady's employment was terminated because of his age or because Liberty genuinely believed Crady had abandoned his employment.

■ The plaintiff who sues an employer for violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34, bears the burden of proving age discrimination. One of the methods to accomplish this goal is to establish a *prima facie* case and apply the burden shifting method described in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1708, 123 L.Ed.2d 338 (1993); *Oxman v. WLS–TV,* 846 F.2d 448 (7th Cir. 1988). This is what Crady sought to do.

■ To do that successfully, Crady must show that 1) he was more than forty years old; 2) he performed his job satisfactorily; 3) despite his satisfactory performance he suffered a materially adverse employment action; and 4) Liberty treated others outside the protected class more favorably than Crady was treated. *Konowitz v. Schnadig Corp.,* 965 F.2d 230, at 232. If Crady estab-

lished his *prima facie* case, Liberty then bears the burden of producing a legitimate nondiscriminatory reason for the materially adverse employment action. *Id.; Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). If Liberty produces a legitimate reason, Crady bears the burden of persuading the court that the reason was merely a pretext for the employment action. *Konowitz*, 965 F.2d at 233.

Crady's climb up the rungs of the *prima facie* ladder is a short one. He clears the first rung that put him in a protected class because he is more than forty years old. Whether he clears the second rung is an open question. We do not have to decide that question for purposes of this opinion because Crady stumbles on rung three. The district court held that Crady failed to establish that the transfer was a materially adverse employment action. The district court held further that even if Crady had established that the transfer was materially adverse and hence established a *prima facie* case, he could not counter Liberty's legitimate nondiscriminatory reason for the employment action—that Crady had abandoned his employment. We agree with the district court.

This case is similar to *Spring v. Sheboygan Area School District*, 865 F.2d 883 (7th Cir. 1989). There, the Sheboygan, Wisconsin school district was reorganized and as a result of that reorganization, Spring, an elementary school principal who was more than 65 years old, was offered either the opportunity to transfer to another school or retirement. The job at the new school was a joint-principal position shared with another individual. Spring resigned and sued the school district for ADEA violations and constructive discharge. She alleged that the position she would have as a result of the transfer was a "public humiliation." We found that "public humiliation" was not sufficient to establish age discrimination and constructive discharge because "public perceptions were not a term or condition of Spring's employment." *Spring*, 865 F.2d at 886.[1]

We considered other factors to determine whether Spring established a *prima facie* case of discrimination. We looked at the work assignments by other principals within the school district and compared the special education programs, the number of students, the size of the staff, and the administrative workload at both schools. Because Spring never worked at the transfer position, she could not support her claims of a dramatically increased administrative workload at the transfer school. We paid heed to the district court's conclusion that the only negative accompanying Spring's job transfer was that she would be required to travel a greater distance to work, although she would be reimbursed for that travel. We noted that Spring stated, apparently under oath, "I don't think [the transfer position] was a lesser job" and that she received a merit pay increase and two-year contract with the transfer. *Id.* We held that the transfer was not a materially adverse employment action and that Spring did not establish a *prima facie* case of age discrimination. *Id.*

Like Spring, Crady did not show that his transfer from the Sellersburg branch manager position to a collections officer posi-

---

**1.** A district court in Kentucky stated that "[t]he clear trend of authority is to require that a transfer with no change in wages or benefits amount to a 'constructive discharge' to be actionable as an 'adverse employment action.'" *Darnell v. Campbell County Fiscal Court*, 731 F.Supp. 1309, 1313 (E.D.Ky.1990), *aff'd*, 924 F.2d 1057 (table) (6th Cir.1991). When affirming, the Sixth Circuit held that "an employee's rejection of a lateral transfer precludes her from arguing that her termination was an 'adverse employment decision' for purposes of establishing a *prima facie* case" citing the Seventh Circuit opinion in *Greenberg v. Kmetko*, 840 F.2d 467, 475 (7th Cir.1988) (*en banc*), and *Spring v. Sheboygan Area School District*, 865 F.2d 883 (7th Cir.1989). The Sixth Circuit decision may not be cited as precedent under local Sixth Circuit rules. The application of the constructive discharge standard to lateral transfers at issue in ADEA claims was noted by a district court in the Seventh Circuit. *Addams v. City of Chicago*, 1992 WL 348848, 1992 U.S.Dist. Lexis 17542, No. 92 C 2893 (N.D.IL. Nov. 12, 1992). Crady, however, does not argue that the conditions surrounding his new job assignment were so untenable that they rendered his continued employment an impossibility, the proof required to establish constructive discharge. *Henn v. National Geographic Society*, 819 F.2d 824, 829 (7th Cir.1987). Therefore, we do not need to consider application of the constructive discharge standard to the instant case.

tion in Charleston was a materially adverse employment action. As we indicated in *Spring,* a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. *See Brown v. M & M/Mars,* 883 F.2d 505 (7th Cir.1989) (employee terminated as a result of age discrimination); *see also Weihaupt v. American Medical Ass'n,* 874 F.2d 419, 427 (7th Cir. 1989) (plaintiff was displaced as departmental director); *Spring,* 865 F.2d at 886. Crady would have maintained a management-level position at the same salary and benefits he was already receiving. Although his responsibilities changed, he does not show that they were less significant than the responsibilities he previously enjoyed in Sellersburg. Assuming that Crady was an assistant vice president in Sellersburg and that the collections officer position did not carry the AVP designation, this alone is not enough to constitute a materially adverse employment action.

Finally, even if we assume as did the district court that Crady established a *prima facie* case of discrimination, we agree that he failed to establish that Liberty's reasons for terminating him were pretextual. Crady failed to provide medical documentation prior to his termination that established that he was unable to return to work. This lack of information was coupled with Crady's failure to respond to Liberty's request that he state his employment intentions before November 30. Under these circumstances, we hold that Crady's discharge for abandonment of his employment was not a pretext for age discrimination.

### III.

The district court judgment is AFFIRMED.