William **WHITCHURCH**, Plaintiff,

v.

**APACHE PRODUCTS COMPANY, and James Burgess, Defendants.**

No. 94 C 5314.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 21, 1996.

be increased by any prediction of damage con-    tinuing into the future.

Craig Edgar Anderson, Charles James Corrigan, Jacobson, Brandvik & Anderson, Chicago, IL, for plaintiff.

Gerald L. Angst, Scott Edward Gross, Lisa D. Freeman, Sidley & Austin, Chicago, IL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

Plaintiff William Whitchurch sues defendants Apache Products Company and James Burgess, Apache's Chief Executive Officer, alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* The defendants' motion for summary judgment is presently before the Court.

### *RELEVANT FACTS*

The parties have submitted the following facts which are uncontested.[1] Apache is in

---

1. Unless otherwise indicated as being disputed, all of the following facts are hereby deemed

the business of manufacturing roofing installation products and has manufacturing plants located in Illinois, New Jersey, Mississippi and California. Defendants' Local Rule 12(M) Statement of Uncontested Material Facts ("Defs.' Facts"), ¶¶ 7–8. The Belvidere, Illinois, plant was acquired in a corporate transaction in late 1986. *Id.*, ¶ 8. Plaintiff Whitchurch served as Apache's plant manager for the Belvidere plant from October 1989 until he was replaced on June 30, 1993. *Id.*, ¶ 10. At the time of his removal, Whitchurch was 63 years of age. *Id.*, ¶ 4.

At the age of 16, Whitchurch injured his back in a car accident. *Id.*, ¶ 11. Complications from the injury persisted through adulthood and, as a result, Whitchurch was forced to use a cane, leg brace or a walker at different times. *Id.*, ¶ 12. Whitchurch also underwent several back surgeries during his employment at Apache. *Id.*, ¶¶ 13, 15, 17. After his last surgery in June of 1992, Whitchurch requested and received a motorized electric cart from Apache which enabled him to move around the plant more easily. *Id.*, ¶ 19.

In November of 1992, Burgess purchased a 75 foot laminator for the Belvidere plant. *Id.*, ¶ 24. He planned to replace the existing 40 foot laminator, and, in turn, increase the plant's production. *Id.*, ¶¶ 22, 25. Burgess asked Whitchurch to store the new laminator at the Belvidere plant and to make arrangements for installing the new equipment. *Id.*, ¶¶ 27–28.

Shortly after the new laminator was purchased in December 1992, Whitchurch's 1992 performance evaluation was prepared. *Id.*, ¶ 30. Burgess gave Whitchurch an overall rating of outstanding, commended Whitchurch's accomplishments in the area of cost reduction and control, and stated, "Bill is the best Plant Manager at Apache." *Id.*, ¶¶ 30–31; Plaintiff's Rule 12(N) Statement of Additional Facts ("Pl.'s Facts"), ¶ 4. However, Burgess also remarked that Whitchurch needed to work on being a little more flexible and that he was obstinate. Defs.' Facts, ¶ 32.

After completing plans to install the new laminator, Whitchurch prepared a memo to Burgess dated January 14, 1993, in which he detailed those plans, including the construction of a $3 million warehouse in which the new laminator would be installed. *Id.*, ¶ 33. Burgess informed Whitchurch that Apache could not afford to build the proposed new warehouse and suggested that the new laminator should be installed in the space of the existing equipment by reversing the production lines. *Id.*, ¶ 34.

In response, Whitchurch submitted a second memo to Burgess dated February 8, 1993, stating that Burgess' idea for installing the new laminator by reversing the lines had been considered but the plan was not feasible for several reasons, *id.*, ¶¶ 36, 38, including disruption of the plant's operations and the physical limitations of the old building. Whitchurch therefore reiterated his proposal for a new warehouse. *Id.*, ¶ 36. After receiving Whitchurch's second memo, Burgess traveled to the Belvidere plant and investigated the possibility of installing the new laminator in the existing warehouse. *Id.*, ¶ 39. The parties dispute what, if any, specific instructions were given to Whitchurch regarding the installation of the new laminator after Burgess' visit to the Belvidere plant. Whitchurch claims that he never received specific written or oral instructions to install the laminator according to Burgess' plan. Apache, conversely, contends that Burgess explicitly directed Whitchurch to install the new laminator in place of the old equipment after Burgess' visit to the Belvidere plant during the late winter of 1993.

In late April or early May of 1993, Whitchurch asked Leo Rawson, Apache's Vice–President of Human Resources and Administration, what his retirement benefits would be if he worked for five more years until he reached the age of 68. Pl.'s Facts, ¶ 8. Shortly thereafter, on May 18, 1993, Burgess traveled to the Belvidere plant and informed Whitchurch that he was being removed as plant manager at Belvidere effective June 30, 1993. Defs.' Facts, ¶¶ 45–46. Burgess in-

established for all further litigation proceedings pursuant to Federal Rule of Civil Procedure 56(d).

formed Whitchurch that he could receive a his full salary through the remainder of the year, and suggested that thereafter he might be able to receive 60% of his salary through disability benefits until he reached retirement. *Id.*, ¶ 47. Whitchurch initially began to pay the disability insurance premiums directly while he considered the plan, but then informed Rawson that he no longer wanted to pursue the benefit plan. *Id.*, ¶¶ 50, 51. Apache then offered Whitchurch a newly-created position as cost reduction manager at the corporate office in Meridian, Mississippi, which included his moving expenses and the same salary he received as plant manager. *Id.*, ¶¶ 52–55. Whitchurch declined the position because he believed Apache did not need a cost reduction manager, and he did not want relocate to Mississippi. *Id.*, ¶ 56.

Whitchurch's employment with Apache ended on June 30, 1993. On July 12, 1993, Apache appointed 39 year old Bob Wilson to replaced Whitchurch as the new Belvidere Plant Manager. *Id.*, ¶ 59; Defendants' Response to Plaintiff's 12(N) Statement of Additional Facts ("Defs.' 12(N) Resp."), ¶ 16.

## LEGAL STANDARDS

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). A genuine issue for trial exists only when the evidence could allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view all evidence in a light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987), and draw all inferences in the nonmovant's favor. *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir.1990). However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Flip Side Prods., Inc. v. Jam Prods., Ltd.*, 843 F.2d 1024, 1032 (7th Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102

L.Ed.2d 249 (1988). In determining whether a genuine issue exists, the court "must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513. In making its determination, the court's sole function is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor. *Id.* at 255, 106 S.Ct. at 2513–14. Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. *Id.*

## ANALYSIS

### Burgess' Liability

■ Defendants argue that the plaintiff's claims against Burgess must be dismissed because individual officers of an employer cannot be held accountable under either the ADA or the ADEA. The Seventh Circuit recently held in *United States Equal Employment Opportunity Comm'n v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1280–82 (7th Cir.1995), that supervisory employees, in their individual capacities, do not meet the statutory definition of "employer" as used under the ADA, and therefore they cannot be held liable for discrimination claims brought pursuant to those statutes. *See also Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 52 n. 2 (7th Cir.1995) (holding that supervisors are not personally liable as "employers" under the ADEA, either); *Williams v. Banning*, 72 F.3d 552, 553 (7th Cir.1995) (as the statutory definition of "employer" is "virtually the same" under the ADA, ADEA, and Title VII, there is no individual liability under any of these statutes). Perhaps realizing the futility of his claims against Burgess individually, Whitchurch did not even respond to this portion of the defendants' argument. We agree that Burgess cannot be held liable under the ADA or the ADEA under current Seventh Circuit law, and we are bound to follow such law, regardless of what our own views may be. *See Lynam v. Foot First Podiatry Ctrs., P.C.*, 886 F.Supp. 1443, 1446 (N.D.Ill.1995). We therefore grant summary judgment in favor of defendant Burgess on all counts.

*The ADEA Claim Against Apache (Count I)*

A plaintiff may prove age discrimination under the ADEA in two ways. The plaintiff may attempt to prove discrimination directly "by presenting direct or circumstantial evidence that age was the determining factor in [plaintiff's] discharge." *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir.1994). The plaintiff may also employ the indirect or burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later applied to ADEA claims in *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1212 (7th Cir.1985).

The *McDonnell Douglas* burden-shifting analysis requires that a plaintiff initially establish a *prima facie* case of discrimination by demonstrating that: (1) he was a member of the protected class (age 40 or over); (2) he was performing his job to his employer's legitimate expectations; (3) he was subjected to a materially adverse employment action; and (4) younger employees were treated more favorably. *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 377 (7th Cir.1995). Once the *prima facie* case is established, the burden then shifts to the employer to articulate legitimate nondiscriminatory reasons for its actions. *Id.* at 377–78. If the employer can provide a legitimate explanation for the adverse employment action, the plaintiff must then demonstrate that the employer's proffered reasons are pretextual and not the true reasons for the removal. *Id.* at 378.

Pretext may be established by demonstrating either "that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). "To defeat a summary judgment motion, the employee need only produce enough evidence from which a rational fact-finder could infer that the company's proffered reasons were pretextual." *Sirvidas*, 60 F.3d at

378. The plaintiff retains at all times the ultimate burden of persuasion that he was the victim of intentional discrimination, however. *Id.*

The parties agree that this case is governed by the burden-shifting method.[2] Within that framework, the parties also agree that Whitchurch satisfied the first and fourth elements of his *prima facie* case. Whitchurch was 63 years old and in the protected class when he was removed from Apache's employ, and Wilson, his replacement, was 39 and not in the protected class at the time Apache appointed him to replace Whitchurch. Defs.' 12(N) Resp., ¶ 16. Although Apache properly points out that Whitchurch's replacement by a younger employee does not, in and of itself, establish age discrimination, the replacement by a younger employee does satisfy one of the necessary elements of a *prima facie* case. *See Grohs v. Gold Bond Bldg. Prods.*, 859 F.2d 1283, 1286 (7th Cir.1988), *cert. denied*, 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 405 (1989) (fourth prong of *prima facie* case is that plaintiff "was replaced by a younger person").

The parties join issue on the second and third elements, whether Whitchurch performed according to Apache's legitimate expectations and whether he was subject to a materially adverse employment action. Focusing first upon the latter element, Apache contends that Whitchurch was not subject to any adverse employment action. Apache denies that it terminated Whitchurch. Instead, Apache claims that it offered Whitchurch the choice of a retirement severance package or an equally compensated transfer position in Mississippi, but Whitchurch refused to accept these offers.

Whitchurch contends that both of Apache's offers would have been adverse employment actions. The retirement package, which essentially consisted of six months' severance

2. Because Apache has proffered a legitimate, nondiscriminatory reason for its action, the sufficiency of the *prima facie* case is, strictly speaking, irrelevant. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). However, as Apache has also challenged two elements of the *prima facie* case, we will address those arguments here.

pay,[3] would have required exactly that—Whitchurch's severance, or termination, from Apache. The transfer position, Whitchurch contends, was a newly-created position that the company did not need, the duties of which were as yet largely undefined.

■ This is a close issue. The materially adverse change in the conditions of employment required to sustain an ADEA *prima facie* case "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993). A materially adverse change may be indicated by, among other things, "a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.*

Apache relies on *Flaherty v. Gas Research Institute*, 31 F.3d 451 (7th Cir.1994), in which the court found that there was no adverse employment action when plaintiff was offered a lateral transfer with the same salary and benefits. The linchpin in that decision, however, was that plaintiff's responsibilities in the transfer position would have been comparable to his previous position, and the plaintiff there did not refute the fact that his transfer position offered him more potential for growth within the company. *Id.* at 456–57.

Apache also cites *Spring v. Sheboygan Area School District*, 865 F.2d 883 (7th Cir. 1989), to support its position. In that case, a principal was transferred to a dual-building principalship and claimed an age-related adverse change in her employment. In determining that no adverse employment action occurred because of her reassignment, the court analyzed the assignments of other principals in the district and compared the number of students, the size of the staff and the workload at both schools in question. *Id.* at 885–86. Unlike the present case, the plaintiff's reassignment included more pay and a longer contract. *Id.* at 886. Moreover, the

plaintiff there stated that she did not think that the new position was a lesser job. *Id.*

■ This case is distinguishable from *Flaherty* and *Spring.* "[A]n employer does not insulate itself from liability for discrimination simply by offering a transfer at the same salary and benefits." *Flaherty*, 31 F.3d at 456–457. The court recognized in *Collins v. Illinois*, 830 F.2d 692, 702 (7th Cir.1987), that reassignment may constitute an adverse employment action even where the transfer does not entail lesser pay or benefits. Adverse job actions are not limited strictly to monetary considerations. *Id.* at 703. It is common knowledge that "an employer can make an employee's job undesirable or even unbearable without money or benefits ever entering into the picture." *Id. Collins* held that there was an adverse employment action where, as in the case at bar, the supervisors of the employee being transferred were unsure of what her responsibilities or authority would be at the newly created job. *Id.* at 704. In that case, the plaintiff's duties consisted of considerably less important work and she no longer had her own office, telephone and business cards. *Id.*

■ The record in this case is not clear as to what Whitchurch's new position would entail. The record does not allow for comparisons between Whitchurch's plant manager position in Belvidere and the newly invented Cost Reduction Manager job in Mississippi. As a result, it is impossible to conduct an analysis of any material change in responsibilities or plaintiff's working conditions. Instead, the Court is required at this juncture to draw all reasonable inferences in favor of Whitchurch.

In addition, Whitchurch presents several facts that, when combined with the lack of information regarding the transfer position, create an issue of fact as to whether Apache's transfer offer was made in good faith. Whitchurch testified that Apache had no use for his newly created cost reduction manager position, and claims that such a position would merely duplicate a substantial portion

---

3. Although Burgess suggested that Whitchurch might also be able to collect disability insurance, it was uncertain whether Whitchurch in fact

could do so, and Whitchurch would have been required to pay the disability insurance premiums personally.

of every plant manager's existing duties. Whitchurch dep. at 129–130. Whitchurch notes that Burgess and Rawson created the new corporate managerial position specifically for him, *id.* at 126–27, after they removed him from his recent managerial position. On the other hand, Whitchurch also testified that a major factor in his decision to decline the transfer was his desire to stay close to his family. *Id.* at 131. Nevertheless, we believe that when viewed in the light most favorable to the plaintiff, Whitchurch's testimony creates a genuine issue of triable fact as to whether he sustained a materially adverse employment action.

The issue of whether Whitchurch performed according to Apache's legitimate expectations lies at the heart of this case. This element of the *prima facie* case is intertwined with the issue of whether Apache's claimed legitimate, nondiscriminatory reason for discharging Whitchurch was in fact pretextual, because Apache's proffered reason is that Whitchurch failed to perform his duties to its expectations. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 n. 4 (7th Cir.1994). Of course, this argument is circular, because whenever an employer fires an employee, that act indicates that the employee was not performing up to the employer's expectations, at least in some subjective sense. *See Pilditch v. Board of Educ.*, 3 F.3d 1113, 1117 (7th Cir.1993); *Wagner v. Kester Solder Co.*, No. 94 C 6039, 1995 WL 399484 at *4 (N.D.Ill. June 28, 1995). Instead, the relevant inquiry is whether the plaintiff can proffer "objective evidence that he is sufficiently competent to satisfy the legitimate expectations of an employer." *Pilditch*, 3 F.3d at 1117. Such evidence may include a showing that other employers were willing to hire the employee, *id.*, or evidence that specifically rebuts the employer's arguments, *Wagner* at *4–5.

Apache contends that Whitchurch failed to live up to Burgess' performance expectations by failing to install the new laminator. The key issue here is whether Whitchurch was specifically instructed by Burgess to install the new laminator in the existing warehouse by reversing the lines. Whitchurch's testimony, coupled with the vagueness of the language relied upon by Apache in Whitchurch's memoranda to Burgess, create a triable issue as to whether Whitchurch was indeed insubordinate or whether Apache's purported reason for Whitchurch's removal was merely a pretext for age discrimination. This triable issue warrants denial of summary judgment.

Apache claims, and Whitchurch admits, that Burgess directed Whitchurch to "make arrangements" for installing the new laminator. Whitchurch responded to Burgess' request by sending a memo dated January 14, 1993, in which he did in fact make arrangements to install the new laminator—in a new warehouse. After Burgess reviewed Whitchurch's plans for the new building, he informed Whitchurch that a new building would be too expensive and that the new laminator should be installed in place of the existing equipment by reversing the lines. Whitchurch, in turn, sent a second memo to Burgess dated February 8, 1993, in which he replied that Burgess' plan to turn the line around and install the laminator had been "considered, but due to the disruption and other factors, was not deemed feasible." In this memo, Whitchurch also stated that he was not objective enough to evaluate further the implementation of Burgess' plan and suggested that Burgess "may want to get someone more objective to do a feasibility study."

Whitchurch contends that he had no further conversations with Burgess regarding the installation of the new laminator after he sent the second memorandum. By contrast, Burgess says that after his trip to the Belvidere plant, he told Whitchurch to develop a plan to install the laminator as he had described. Apache contends that Whitchurch was removed from the plant manager position in May of 1993, for failing to install the line as requested. Whitchurch, however, rebuts Apache's proffered legitimate reason for dismissal with testimony that he was never specifically instructed to install the new laminator according to Burgess' directions.

Whitchurch also presents evidence that Apache's proffered neutral, non-discriminatory reason for removing him was a pretext. In early May of 1993, at the age of 63, Whitchurch asked Rawson what his retire-

ment benefits would be if he were to work until the age of 68. Rawson had not known before that time how long Whitchurch intended to work for Apache and says that he did not discuss Whitchurch's question (or the answer) with Burgess. Two weeks after learning of Whitchurch's plans to work until he was 68, Apache removed Whitchurch as plant manager. Based on this timing, a rational fact-finder could conclude that Apache's claim of insubordination was a pretext for age discrimination.

Whitchurch casts sufficient doubt upon Apache's proffered reason for removal to make summary judgment on Count I inappropriate. Whitchurch's testimony concerning the lack of a specific instruction to install the new laminator in the old building addresses Apache's assertions that Whitchurch was removed because he refused to install the new equipment and satisfies the final element of his *prima facie* case. Whitchurch also sufficiently addresses the issue of pretext by suggesting that, after learning of his desire to work five more years until he was 68, Apache fired him to escape paying his salary and pension benefits.

If believed, Whitchurch's testimony establishes that without warning, Apache removed an experienced hard-nosed supervisor—one who, just months before, had been rated the best plant manager at Apache, and who, just weeks before, alerted Apache as to his intentions to work for another five years—for not following instructions which he never specifically received, and then coincidentally replaced him with a man more than twenty years younger. Given these facts, a jury could rationally infer that age played a role in the decision to discharge Whitchurch.

Of course, the evidence presented at trial may result in a different conclusion. The case will turn on the credibility of the parties and their witnesses. Credibility determinations are best left to the finder of fact. *Courtney v. Biosound,* 42 F.3d 414, 424 (7th Cir.1994). Whitchurch's evidence is sufficient to create a genuine issue of material fact as to Apache's proffered reason for removal. As a result, the defendants' motion for summary judgment in favor of Apache must be denied as to Count I, the claim of age discrimination.

*ADA Claim Against Apache (Count II)*

As a supplement to his age discrimination claim, Whitchurch contends that Apache discharged him because of a disability in violation of the ADA. As with his age discrimination claim, Whitchurch may prove discrimination based upon disability either by direct evidence or by using the *McDonnell Douglas* burden shifting method. *DeLuca v. Winer Industries, Inc.,* 53 F.3d 793, 797 (7th Cir.1995). Whitchurch elects to proceed under the burden-shifting method. In order to establish a *prima facie* case of disability discrimination under the ADA using the *McDonnell Douglas* method, a plaintiff must demonstrate that he was: (1) a member of the protected class; (2) performing his job to his employer's legitimate expectations; (3) subjected to a materially adverse employment action; and (4) replaced by an employee not in the protected class. *Id.; cf. Palmer v. Circuit Court of Cook County, Social Service Department,* 905 F.Supp. 499, 506 (N.D.Ill.1995) (elements are that the employee was a disabled person within the meaning of the ADA; was able to perform the essential functions of the job; and was subjected to an adverse employment action because of her or his disability).

Whitchurch satisfies the requirement of a *prima facie* case under the ADA, at least for summary judgment purposes. Apache concedes that Whitchurch is a member of the protected class. Whitchurch's replacement was not in the protected class. Apache contends that Whitchurch was not performing to his employer's legitimate expectations and that he was not subject to any adverse employment action. As discussed above, the Court finds that Whitchurch raises an issue of fact on these issues. Accordingly, Whitchurch has made out a *prima facie* case of disability discrimination. *See generally Pilditch,* 3 F.3d at 1117 (elements of a *prima facie* indirect evidence case are relatively simple, and are designed to allow the plaintiff to survive summary judgment even in the absence of direct evidence) (citations omitted).

Apache has articulated a legitimate nondiscriminatory reason for its actions, i.e., insubordination, so the burden shifts to Whitchurch to present evidence that this reason is simply a pretext for discrimination based on his disability. Whitchurch's evidence on this point fails to demonstrate a material question of fact. To show discriminatory intent, Whitchurch points only to a single statement made "on an occasion before an operation," when Burgess asked if Whitchurch would be able to walk without his walker after the surgery. Defs.' Mem., Ex. G. Whitchurch's last operation occurred almost a year prior to the date he was removed. Whitchurch dep. at 72. Even if viewed in the most favorable light, this remark is distant in time from the date of Whitchurch's termination and demonstrates nothing more than an employer's attempt to foresee accommodations that might be necessary in the future. Standing alone, this evidence could not sustain a jury verdict in favor of Whitchurch.

We do note that Apache offered Whitchurch a severance package which purported to include disability insurance payouts, and encouraged Whitchurch to accept the package even though Burgess was uncertain as to whether Whitchurch qualified for disability. The unsolicited nature of this "offer" of disability payments may be relevant to show that an employee's disability loomed large in the employer's mind. *See Wagner v. Kester Solder Co.*, 1995 WL 399484 at *9–10 (N.D.Ill. June 28, 1995). Without other evidence as to disability discrimination, however, the court cannot find a triable issue of fact as to whether Whitchurch was terminated because of a disability. A mere scintilla of evidence will not suffice to defeat a motion for summary judgment; there must be evidence that would enable a reasonable jury to find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. at 2511. Accordingly, we grant summary judgment in favor of Apache on Count II, the ADA claim.

## CONCLUSION

The Court grants the defendants' motion for summary judgment [34–1] in favor of defendant Burgess on all claims. The Court also grants summary judgment in favor of Apache on Count II, the ADA claim. The motion is denied as to Count I, the ADEA cause of action against Apache. A Final Pretrial Order consistent with this opinion will be due on March 24, 1996. The parties are directed to appear for a status hearing on March 5, 1996 for the express purpose of setting a firm trial date for the issues that remain in this case.