949 F.Supp. 26 (1996)
JoAnn CARPENTER, Plaintiff,
v.
FEDERAL NATIONAL MORTGAGE ASSOCIATION, Defendant.
Civil Action No. 96-02399 (CRR).
United States District Court, District of Columbia.
December 19, 1996.
*27 Kenneth M. Robinson, Nicholas J. Hantzes, The Robinson Law Firm, Washington, D.C., for Plaintiff.
John Payton, Wilmer, Cutler & Pickering, Washington, D.C., for Defendant.

MEMORANDUM OPINION
CHARLES R. RICHEY, District Judge.
On October 17, 1996, the plaintiff, JoAnn Carpenter, filed a complaint alleging sex discrimination and retaliation by her employer pursuant to various sections of the District of Columbia Human Rights Act. The defendant, Federal National Mortgage Association ("FNMA"), has moved to dismiss the plaintiff's discrimination claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, the defendant's motion shall be denied.
Ms. Carpenter is one of eight people in the General Counsel's Office at FNMA who hold the position of Vice President and Deputy General Counsel. She alleges that FNMA unlawfully discriminated against her when a male Vice President and Deputy General Counsel, Joseph Biegel, was given a "new supervisory position as part of reorganization of the Office of General Counsel." Complaint at ¶ 12. Specifically, she claims that on July 29, 1996, FNMA vested Mr. Biegel with responsibilities, power and influence in the General Counsel's office equivalent to that held by a higher-ranked Senior Vice President, despite the fact that Mr. Biegel's formal job title remained that of a Vice President and Deputy General Counsel like the plaintiff's. Id. at ¶¶ 12 and 14. As a consequence, the plaintiff alleges, Mr. Biegel effectively now holds a position in the corporate hierarchy higher than the position she holds, has increased supervisory responsibility in the General Counsel's office, and performs some tasks that traditionally have been preserved for Senior Vice Presidents. See First Affidavit of JoAnn Carpenter at ¶¶ 7-10. By virtue of his new responsibilities, Mr. Biegel purportedly has increased access to the Executive Vice President, access which allegedly places him in a "favored position for increased compensation and further advancement." Id. at 12.
Ms. Carpenter claims that she was more qualified than Mr. Biegel to receive this additional responsibility and influence with FNMA because (1) she had trained and supervised Mr. Biegel for a seven-year period; (2) she had been promoted to the position of Vice President and Deputy General Counsel five years before Mr. Biegel received his promotion to that position; (3) she held the same job title as Mr. Biegel; and (4) she has had four more years of service with FNMA than Mr. Biegel. Id. at 12, 23. She further claims that her sex was a substantial factor in FNMA's "decision to reorganize the Office of General Counsel in a manner that discriminated against [her] in the terms and conditions of employment." Id. at 25.
The defendant argues that the plaintiff has pled her claim solely as a promotion denial. It further argues that an essential element of any failure to promote claim is that someone actually be promoted, and that because FNMA never promoted anyone to Senior Vice President  Mr. Biegel does not hold the title of Senior Vice President  the plaintiff cannot even make out a prima facie case of discrimination. The defendant is mistaken.
While it is true that the complaint intermittently invokes the word "promotion," the crux of the plaintiff's allegations is that she was denied certain privileges of employment, namely certain job responsibilities associated with a Senior Vice President, because of her sex. Therefore, it is not appropriate to "pigeonhole" the complaint into the failure to promote rubric, when it is apparent from all of the allegations that the plaintiff has alleged a claim of disparate treatment in the terms, conditions or privileges of her employment. See D.C.CODE ANN. § 1-2512(a)(1) (1992) (making it unlawful for an employer "to discriminate against any individual, with respect to his ... terms, conditions or privileges of employment ...").
To the Court's surprise, the defendant further argues that D.C. Human Rights Act "does not reach an employer's allocation *28 of responsibilities among employees of equal rank." If this is so, the defendant has managed to eviscerate a substantial body of employment discrimination law recognized by the United States Supreme Court.[1]See Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am., UAW v. Johnson Controls, Inc., 499 U.S. 187, 210, 111 S.Ct. 1196, 1209, 113 L.Ed.2d 158 (1991) (holding that a battery manufacturers' policy of prohibiting fertile female workers, but not fertile male workers, from performing tasks in which they would be exposed to lead violated Title VII); accord Johnson v. Phelan, 69 F.3d 144, 146 (7th Cir.1995) (noting that Title VII would preclude a prison from prohibiting female prison guards  but not male prison guards  from monitoring male prisoners in various states of undress), cert. denied sub nom, Johnson v. Sheahan, ___ U.S. ___, 117 S.Ct. 506, 136 L.Ed.2d 397 (1996); Cox v. Kentucky Dep't of Transp., 53 F.3d 146, 150 (6th Cir.1995) (ADEA case; holding that the plaintiff had suffered an adverse employment action for purposes of his prima facie case when the employer filled a position with a younger employee through a lateral transfer, despite the fact that this employment action involved no change in pay or grade for either the plaintiff or the younger employee).[2] The D.C. Human rights Act does "reach an employer's allocation of responsibilities among employees of equal rank" if the employer's allocation is based on sex.
Where, as here, the plaintiff has alleged that FNMA assigned significant job responsibilities to Mr. Biegel because of her sex, responsibilities which purportedly place him in a better position for increased compensation and further advancement in FNMA, she has alleged a materially adverse employment action against her, and, therefore has stated a claim for disparate treatment under the D.C. Human Rights Act. See, e.g., Spring v. Sheboygan Area Sch. Dist., 865 F.2d 883, 885 (7th Cir.1989) (holding that in order to prove an age discrimination claim, "a plaintiff must prove that she suffered a materially adverse change in the terms or conditions of her employment because of her employer's discriminatory conduct").[3] Whether the plaintiff in fact will be able to marshal admissible evidence in support of these allegations is not for the Court to resolve at this juncture.

ORDER
For the reasons set forth in the Court's Memorandum Opinion of even date herewith, it is, by the Court, this 19th day of December, 1996.
ORDERED that the defendant's motion to dismiss the plaintiff's claim for sex discrimination shall be and hereby is DENIED; and, it is
FURTHER ORDERED that the defendant shall file an answer to the complaint by no later than 4:00 p.m. on December 31st, 1996; and, it is
FURTHER ORDERED that any and all discovery in the above-captioned case shall *29 be completed on or before 4:00 p.m. on February 19, 1997, and that the attorneys shall meet and confer regarding all discovery disputes by that date. There shall be no stipulated extensions for discovery; and, it is
FURTHER ORDERED that the plaintiff shall disclose any and all Federal Rule of Civil Procedure 26 Opinion Witness statements on or before 4:00 p.m. on January 22, 1997, and that the defendant shall disclose any and all such Opinion Witness statements on or before 4:00 p.m. on February 2, 1997; and, it is
FURTHER ORDERED that any dispositive motions and motions in limine shall be filed on or before 4:00 p.m. on February 28, 1997; and any and all Oppositions thereto shall be filed on or before 4:00 p.m. on March 12, 1997; and any and all Replies thereto shall be filed on or before 4:00 p.m. on March 17, 1997; and, it is
FURTHER ORDERED that in preparation for trial and pursuant to Rule 16 of the Federal Rules of Civil Procedure, Federal Rule of Evidence 611(a), and Local Rule 209, counsel shall prepare all of the direct testimony of the witnesses they intend to call in their case-in-chief that are in their control in written narrative form and shall serve the same upon opposing counsel, together with a witness list, on or before 4:00 p.m. on February 28, 1997, and that counsel shall confer in person and discuss and resolve any evidentiary objections, and then file the final versions, together with a witness list, with the Court and with Chambers (Room 4317) on or before 4:00 p.m. on March 12, 1997. At the same time, any portion of the direct testimony which remains in dispute shall be filed separately, and the Court shall resolve these disputes, if any, prior to the trial; and, it is
FURTHER ORDERED that the above-ordered direct testimony shall be by way of declaration, pursuant to 28 U.S.C. § 1746, or sworn affidavit; and, it is
FURTHER ORDERED that the above-ordered direct testimony shall be in lieu of the usual question-and-answer form of direct examination, although full cross examination shall be permitted at trial; and, it is
FURTHER ORDERED that the parties shall prepare an exhibit list and the exhibits they plan to use at trial and shall serve the same upon opposing counsel on or before 4:00 p.m. on February 28, 1997. Counsel shall confer in person and discuss and resolve any and all evidentiary objections as to the admissibility of the exhibits, and shall determine which exhibits can be received and admitted into evidence without formal proof. Counsel shall file a final exhibit list with the Court and with Chambers (Room 4317), indicating which exhibits can be admitted without formal proof, and which exhibits are objected to by opposing counsel, on or before 4:00 p.m. on March 12, 1997; and, it is
FURTHER ORDERED that the parties shall file any stipulations of fact or law with the Court and with Chambers by 4:00 p.m. on March 12, 1997; and, it is
FURTHER ORDERED that no later than 4:00 p.m. on February 28, 1997, the plaintiff's counsel shall prepare and serve upon the defendant's counsel the following "trial materials": a concise preliminary statement of the case setting forth in a neutral manner the claims and contentions of the parties which shall be read to the prospective jury panel at the beginning of voir dire; proposed voir dire questions; preliminary jury instructions to be read by the Court at the start of trial after the jury is selected; the final jury instructions; and a verdict form; and, it is
FURTHER ORDERED that the parties shall confer in person regarding these materials and jointly submit to the Court and to Chambers (Room 4317) by 4:00 p.m. on March 12, 1997, an agreed upon set of trial materials described in the foregoing paragraph. Counsel shall furnish these materials on paper and on a computer disk compatible with the WordPerfect IBM computer system; and, it is
FURTHER ORDERED that counsel for the parties shall appear for a pretrial conference at 2:00 p.m. on March 21, 1997; and, it is
FURTHER ORDERED that trial in the above-captioned case shall commence at 10:00 a.m. on March 24, 1997.
NOTES
[1] In applying the D.C. Human Rights Act, District of Columbia courts generally apply the burden of proof for a claim of disparate treatment under federal law. See, e.g., O'Donnell v. Associated Gen. Contractors of Am., Inc., 645 A.2d 1084, 1086 (D.C.1994).
[2] A simple hypothetical demonstrates how erroneous the defendant's position is. Suppose the partners in the defendant's counsel's law firm had to determine how to allocate work between a male and a female associate with identical experience, education and competence and receiving the same pay and benefits. Suppose further that the partners give the male associate the opportunity to spend the next year first-chairing a high-profile trial and the female associate the opportunity to spend that same year reviewing documents in a dusty, dimly-lit cellar, and that the stated reason for this allocation of responsibilities is that "women read better in dusty, dimly-lit cellars." Surely, this hypothetical female associate would have a viable claim for disparate treatment, even though she has suffered no loss of pay or rank in her law firm. Under the defendant's view, however, she would not. The defendant is mistaken.
[3] Accord Crady v. Liberty Nat'l Bank and Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir.1993) ("A material adverse change might be indicated by ... significantly diminished material responsibilities ..."); cf. Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir.1994) (race and age discrimination case: "Changes in duties or working conditions that cause no materially significant disadvantage ... are insufficient to establish the adverse conduct required to make a prima facie case.").