**Marsha SMITH, Plaintiff,**

v.

**Jesse BROWN, Secretary of the Department of Veterans Affairs, Defendant.**

**No. 95 C 5282.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 26, 1997.

---

Rick Allan White, Chicago, IL, for Plaintiff.

Marsha Smith, Chicago, IL, pro se.

Young B. Kim, U.S. Attorney's Office, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Marsha Smith, brought suit against the defendant, Jesse Brown, the Secretary of her employer, the Department of Veterans Affairs, alleging violations of Title VII. The defendant moved for summary judgment. For the following reasons, the motion is granted.

### I.[1]

Ms. Smith works for the defendant's West Side Medical Center in Chicago, Illinois ("West Side"). She began her employment in 1984 as a clerk-typist; in 1985, Ms. Smith was promoted to the position of secretary/typing, grade GS–5; and in 1990, the plaintiff became a secretary of the Chief of Police and Security Service ("PSS") at West Side. On August 1992, James Curry became the Chief of PSS at West Side. Smith's immediate supervisor during the relevant time period was Richard E. Green, the Assistant Chief of PSS.

On March 3, 1994, Ms. Smith contacted an Equal Employment Opportunity ("EEO") Counselor, Patricia Dawson, and complained

---

1. The following facts are undisputed.

about Mr. Curry's use of profanities and his habit of touching her. On the same day, Ms. Dawson relayed to Mr. Curry Ms. Smith's complaint. Mr. Curry . ceased all physical contact immediately.

After complaining to Ms. Dawson, Ms. Smith received several written work directives authored by Mr. Green and prompted by Mr. Curry. Mr. Curry also requested that she twice copy her files onto diskettes and twice retrieve certain documents from the Personnel Dispensary.

On June 3, 1994, not being able to reach an informal resolution of the conflict, Ms. Dawson advised Ms. Smith of her right to file a formal complaint with the Department of Veterans Affairs. Ms. Smith filed such a complaint on June 17, 1994 ("June 17, 1994 complaint"), complaining of sexual harassment and retaliation. On September 14, 1994, the defendant assigned an EEO Investigator to investigate Ms. Smith's complaint, who interviewed the plaintiff on October 3 and 5.

Ms. Smith indicated to Ms. Dawson and in her June 17, 1994 complaint that she wished to be transferred out of PSS. Bernadette Biskup, the Acting Associate Medical Center Director, transferred Ms. Smith first, to the Planning and Data Management ("PDM") Division; second, to the Office of Rehabilitation and Medicine ("ORM"); and finally, to the Veterans Resource Center ("Veterans Center").

During the same time period, Ms. Smith applied for but was denied promotions to the following two GS–6 level positions: Program Clerk at the Education Service ("Program Clerk") and Program Assistant at the Woman's Veterans Program ("Program Assistant"). Believing these denials to be retaliatory, Ms. Smith again complained to an EEO Counselor and filed another complaint with the Department of Veterans Affairs on June 22, 1995 ("June 22, 1995 complaint").

Ms. Smith's three-count Second Amended Complaint charges the defendant with sexual harassment perpetrated by Mr. Curry (Count I) and with retaliation for complaining about the harassment (Count II and III).

Ms. Smith claims that the written work directives, "redundant" work tasks, "menial" temporary assignments, and the denial of promotions constitute retaliation. The defendant has moved for summary judgment on all counts.

II.[2]

## I. SEXUAL HARASSMENT

Title VII protects employees from employers who "discriminate against an[] individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). A form of "sex" discrimination is sexual harassment. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–66, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986). To prove sexual harassment, the plaintiff must show (1) that the harassing conduct was motivated by her gender and (2) that the conduct created a hostile working environment. *Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164, 1167–68 (7th Cir.1996); *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir.1994). A hostile working environment exists if the defendant's conduct is "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Koelsch v. Beltone Elecs. Corp.,* 46 F.3d 705, 708 (7th Cir.1995) (quotation omitted).

 Ms. Smith complains that Mr. Curry used terms such as "son of a bitch" and "thumbs up their butts," while talking to male police officers in the vicinity of the plaintiff's work space. Speech that has sexual overtones does not automatically violate Title VII. *Doe,* 42 F.3d at 443. The comments at issue here were not directed at the plaintiff. Ms. Smith does not argue that Mr. Curry deliberately spoke the profanities within her hearing. Vulgar banter of the sort engaged in by Mr. Curry, although offensive and unpleasant, is not sufficiently severe to constitute sexual harassment. *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430–31 (7th Cir.1995).

Ms. Smith also complains that Mr. Curry touched her shoulders, hands, and arms.

---

2. The standard for summary judgment is well known and will not be repeated here.

The defendant contends that Mr. Curry's physical contact with Ms. Smith was not motivated by her gender. In support, it furnishes affidavits of male employees, stating that Mr. Curry touched them on arms and shoulders in the course of conversations. However, the male employees use the term "touching," while Ms. Smith uses the term "rubbing and/or massaging" to describe the physical contact. Ms. Smith also complains of Mr. Curry's staring at her chest.[3] Drawing all inferences in favor of Ms. Smith, a rational fact finder could find that the above conduct was motivated by Ms. Smith's gender.

Whether a working environment is "hostile" is determined by "evaluating all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the worker's performance." *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 479–80 (7th Cir.1996) (quotation omitted). The court must evaluate the relevant factors from both an objective and a subjective viewpoint.[4] *Id.* at 480. "[R]elatively isolated instances of non-severe misconduct will not support a hostile environment claim." *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir.1993) (quotation omitted).

Here, Ms. Smith and Mr. Curry were in daily contact for a two-year period. During that period, from mid-January to February 1994, Ms. Smith says that she experienced Mr. Curry's unwelcome touching and staring three to four times a week. That is sufficient to find a question of fact as to whether Mr. Curry's conduct created a hostile environment.

■ Ms. Smith's sexual harassment claim must fail, however, because the defendant took steps to rectify the situation. The defendant is responsible for Mr. Curry's con-

duct only if it "knew or should have known about [Mr. Curry's] acts of harassment and fail[ed] to take appropriate remedial action." *McKenzie*, 92 F.3d at 480. *Accord Jansen v. Packaging Corp. of Am.*, 123 F.3d 490, 498–99, 505–07 (7th Cir.1997) (en banc). The defendant must have responded in a manner "reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations [we]re made." *McKenzie*, 92 F.3d at 480. The reasonableness of the action depends upon the gravity of the alleged harassment. *Baskerville*, 50 F.3d at 432.

Ms. Smith complained to Ms. Dawson, the defendant's EEO Counselor, about Mr. Curry's offensive conduct on March 3, 1994. Ms. Dawson contacted Mr. Curry on the same day and apprised him of the situation. It is undisputed that Mr. Curry immediately ceased all physical contact with Ms. Smith. Thus, the defendant's response was reasonable and effective. Having taken "prompt and appropriate remedial action," the defendant discharged its legal duty towards Ms. Smith. *Id.* Defendant's summary judgment motion is granted with respect to Count I.

## II. RETALIATION

Title VII makes it unlawful "for an employer to discriminate against any of his employees ... because [s]he has opposed any practice made an unlawful practice by [Title VII]." 42 U.S.C. § 2000e–3(a). Ms. Smith claims that the defendant retaliated against her because she complained about Mr. Curry's sexual harassment. Ms. Smith identifies the following retaliatory employment actions: (1) written work directives; (2) "redundant" work tasks; (3) three "menial" temporary assignments; and (4) a denial of promotions to two GS–6 level positions.

Although other circuits have agreed with her proposition, *see, e.g., Burns v. McGregor Electronic Indus., Inc.*, 989 F.2d 959, 962 n. 3 (8th Cir.1993); *Ellison v. Brady*, 924 F.2d 872, 878–79 (9th Cir.1991), the Seventh Circuit has not yet decided this question. *Saxton*, 10 F.3d at 534 n. 13. The result of my analysis is the same under either standard.

---

3. Ms. Dawson's report does not reflect Ms. Smith's complaint that Mr. Curry stared at her chest. Ms. Smith says that she does not remember whether she advised Ms. Dawson about that practice.

4. Ms. Smith stresses that the objective inquiry is to be conducted from the perspective of a reasonable woman, as opposed to a genderless person.

## A. Adverse Employment Action

■ Retaliatory employment actions must be materially adverse to be actionable. *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir.1996). "[A]dverse job action is not limited solely to loss or reduction of pay or monetary benefits." *Collins v. State of Illinois*, 830 F.2d 692, 703 (7th Cir.1987). It may be "indicated by ... a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993). The employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996).

■ Ms. Smith reports receiving four written work directives—one on March 3, 1994, immediately after Ms. Smith complained to Ms. Dawson, one on March 16, 1994, and two on March 17, 1994. She also says that Mr. Curry requested that she twice copy her hard drive onto diskettes, and twice retrieve copies of certain documents from the Personnel Dispensary. Neither the written work directives nor the "redundant" work tasks amount to materially adverse employment actions. The written work directives explained assignments and set completion dates. The tasks, even if redundant,[5] were, at most, an inconvenience.

## B. Direct Evidence of Retaliation

A plaintiff who asserts a claim of retaliation under Title VII may proceed under one of two methods: the "direct evidence" analysis, *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989), or the "burden-shifting" approach. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).

■ Under the former method, the employee must proffer direct evidence that retaliatory motives played a substantial role in the employer's adverse employment action. *Larsen v. Club Corp. of Am., Inc.*, 855 F.Supp. 247, 252–56 (N.D.Ill.1994) (applying *Price Waterhouse* method to retaliation claim). The employee ultimately succeeds, unless the employer can show it would have taken the same action in the absence of such motives. *Id.*

■ Ms. Smith argues that she has direct evidence of retaliation. She refers to a telephone conversation in which she says Mr. Green told her that Mr. Curry was trying to force her to quit PSS. As the defendant argues, the telephone conversation, which Ms. Smith tape-recorded, is open to different interpretations. Interpreting it in Ms. Smith's favor, it is evidence that Mr. Curry's actions towards Ms. Smith prior to her transfer out of PSS, discussed above, were retaliatorily motivated. However, "[a]n employee's ... 'direct evidence' ... must ... relate to the specific employment decision in question." *Oates v. Discovery Zone*, 116 F.3d 1161, 1170 (7th Cir.1997). Mr. Curry was not responsible for the two employment actions which can be deemed materially adverse: detailing Ms. Smith to three "menial" temporary positions and failing to select her for the GS–6 level positions for which she applied. The telephone conversation provides no direct evidence that the ultimate decision-makers shared Mr. Curry's motive. Therefore, the telephone conversation cannot be offered as direct evidence of retaliation.[6]

## C. Burden-Shifting Method

Ms. Smith also relies on the *McDonnell Douglas* "burden shifting" method. Under this method, the employee must first establish a prima facie case of retaliation. To establish a prima facie case of retaliation, Ms. Smith must show (1) that she engaged in a statutorily protected expression; (2) that she suffered an adverse action by her em-

---

**5.** The defendant disputes that the tasks were redundant.

**6.** The evidence of Mr. Curry's retaliatory motive may nevertheless be relevant insofar as that motive may have tainted the materially adverse employment actions of other decision-makers.

ployer; and (3) that there is a "causal link" between her protected expression and the adverse action. *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir.1994).

Once the plaintiff has made out her prima facie case, the employer must articulate a legitimate, non-retaliatory reason for its adverse action. The burden then shifts back to the plaintiff to create a genuine issue of material fact that the offered reason was merely pretextual. *Id.*

### 1. Temporary "Menial" Assignments

Ms. Smith complains that the temporary positions to which Ms. Biskup, the Acting Associate Medical Center Director, transferred her—first, to PDM, next, to ORM, and finally, to the Veterans Center—were below her skill and grade levels, while there was a permanent secretarial position available at the office of the Chief of Psychology Service.

■ Ms. Biskup knew of Ms. Smith's complaint. Thus defendant concedes that the plaintiff has shown a prima facie case with respect to the three temporary assignments. The defendant has provided a legitimate, non-retaliatory reason for the nature of Ms. Smith's assignments. It is undisputed that Ms. Biskup transferred Ms. Smith out of PSS because Ms. Smith indicated that she no longer wanted to work there. Pursuant to the defendant's standard procedure, Ms. Smith was placed in a "pool" of employees in need of new positions. These employees were expected to "pitch in and help out" wherever necessary, and were therefore "detailed" to fill the temporary needs of the departments Ms. Biskup staffed.

■ Ms. Smith attempts to show that although the defendant treated her in accordance with its standard procedure, the defendant's reasons are pretextual, and Ms. Biskup was really motivated by retaliation. The fact that Ms. Smith was required to perform clerical, rather than secretarial, tasks does not raise an inference of pretext. Ms. Smith

was in need of a new position and the departments to which she was assigned were in need of the type of assistance Ms. Smith was able to provide. The temporary positions affected neither her grade level nor her salary.

Ms. Smith also says that she was not, in fact, needed at ORM because the permanent secretary was in the office during the plaintiff's "detail." This evidence does not undermine the defendant's proffered reason. The defendant said that ORM needed help due to a secretary's illness. Secretaries perform a variety of tasks and this secretary's illness may have affected her ability to fulfill the typing needs of the department. In keeping with the defendant's standard procedure, Ms. Smith was assigned to ORM to aid them with typing.[7]

Ms. Smith also says that a permanent position comparable to the one she held at PSS was available in the office of the Chief of Psychology Service, and that Ms. Biskup should have transferred the plaintiff to that position. The defendant says that Ms. Biskup did not have the authority to take a person from the "pool" of available employees and place him or her in that vacancy. Ms. Smith insists that the defendant had the authority to override the competitive selection process and place her in that position. (Smith Aff. ¶ 14.) The plaintiff does not indicate which of the defendant's decisionmakers had such authority or how she knows that such an override was possible. At any rate, it is undisputed that Dr. George Meschel was responsible for staffing the Department of Psychology. Dr. Meschel states that he received a list of qualified candidates from the Human Resource Management Service and chose the best qualified individual. Ms. Smith does not claim that Dr. Meschel's decision was tainted by the retaliatory motive. Therefore, the plaintiff cannot create a genuine issue of material fact with respect to pretext concerning the nature of the three

---

7. Ms. Smith insists that Ms. Biskup's actions were retaliatory because "Biskup ... is believed to reside with one of [Mr.] Curry's relatives and it [is] a matter of common knowledge ... that [Mr.] Curry and [Ms.] Biskup are good friends."

(Smith Aff. ¶ 18.) At a hearing on August 12, 1997, I gave plaintiff until September 10, 1997 to provide the court with any supplemental material that might substantiate this statement with non-hearsay evidence. Plaintiff did not do so.

temporary positions to which she was transferred.

### 2. Denied Promotions

 Ms. Smith applied for but was denied promotions to two GS–6 level positions, Program Clerk and Program Assistant.[8] The defendant concedes that Ms. Smith satisfies the first two elements of her prima facie case. As to the third element, the "causal link" between the protected expression and the adverse employment action, the plaintiff must demonstrate that the adverse action would not have occurred "but for" the protected expression. *McKenzie*, 92 F.3d at 483. Thus, the party responsible for the action must be aware of the protected expression. *Dey*, 28 F.3d at 1458.

The officials responsible for selecting the Program Clerk and the Program Assistant state that they were unaware of Ms. Smith's complaint against Mr. Curry at the time they made their selections. Ms. Smith counters that her complaint against Mr. Curry undoubtedly surfaced during the selection procedure, and that Mr. Curry "would have been contacted and ... would have tainted any possibility of her selection." (Smith.Aff.¶ 23.) Ms. Smith's belief is insufficient to raise a genuine issue of material fact as to the existence of a "causal link" between her complaint and the decisions to deny her the Program Clerk and the Program Assistant positions.[9] *See Johnson v. University of Wis.–Eau Claire*, 70 F.3d 469, 480 (7th Cir. 1995). Consequently, her prima facie case

for retaliation fails with respect to the denied promotions.[10]

### Conclusion

For the reasons stated above, the defendant's summary judgment motion is granted.

---

8. Ms. Smith withdrew her allegation that she was retaliatorily denied a promotion to the position of Program Clerk at the Veterans Center.

9. The plaintiff may establish the "causal link" by providing evidence that the adverse employment action took place "on the heels" of the protected expression. *Dey*, 28 F.3d at 1458 (firing within four weeks of complaint establishes causal link). Ms. Smith does not argue that the temporal proximity of her complaint, March 3, 1994, and her failure to be selected for the two positions establishes the "causal link." The record shows that Ms. Smith applied for the Program Clerk position in June 1994, which was filled in December 1994. (Def.'s Ex. 37, 38.) Ms. Smith applied for the Program Assistant position in August 1994, which was filled in November 1994. (Def.'s Ex. 40, 41.)

At a hearing on August 12, 1997, I gave Ms. Smith until September 10, 1997 to take additional depositions and to provide any evidence that the officials responsible for selecting the Program Clerk and the Program Assistant contacted Mr. Curry or anyone else from whom they might have learned of her complaint. She did not do so.

10. Even if Ms. Smith was able to make out her prima facie case, the defendant offers legitimate reasons for not selecting Ms. Smith. Although Ms. Smith was deemed qualified, the decision-makers affirmed that they selected the best qualified candidates. Ms. Smith cannot create a factual issue of pretext because she offers the same conjecture she did to establish the "causal link."