**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JANET GAYLE HARRIS,
Plaintiff-Appellant,

v.

GENERAL MOTORS POWERTRAIN, a
Division of General Motors
Corporation,
Defendant-Appellee.

No. 98-1394

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-97-880-A)

Submitted: December 9, 1998

Decided: January 11, 1999

Before WILLIAMS, MICHAEL, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Sol Z. Rosen, Washington, D.C., for Appellant. Roger L. Gregory, M.
Janet Palmer, WILDER & GREGORY, Richmond, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Janet Harris appeals the district court's order dismissing her gender discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e -- 2000e-16 (West 1994 & Supp. 1998). For the reasons set forth below, we affirm.

In 1981 Janet Harris began working for the General Motors Powertrain ("GMP") division of General Motors as a production worker, and consequently became a member of the International Union, United Automobile, Aerospace and Agriculture Implement Workers of America (the "Union" or "UAW"). In 1993 General Motors entered into a national agreement with the UAW recognizing the Union as the "exclusive representative of the production and maintenance employees . . . for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment, or other conditions of employment." In 1985 Harris transferred to a skilled trades position in the maintenance department, and in September 1995 began working in the prototype division of the maintenance department ("prototype"). At the time she was the only woman in prototype and the only female employee of her job classification in the maintenance department.

In October 1995 Harris filed a grievance with her Union based on the disparity in the amount of overtime hours available between the first and second shifts in prototype. Thereafter, a series of incidents occurred that gave rise to this lawsuit. Specifically, fellow prototype worker Mark Moats would frequently change the password on a work computer without informing Harris. Harris' consequent inability to access this computer interfered with her job performance, and her complaints to supervisor Royden Grove and personnel director Kevin Smith failed to remedy the situation. In November or December 1995, Harris found a sheet of paper on a bulletin board in the computer

2

room that said "PMS," and something to the effect of, "are you suffering from PMS, there is help at your local psychiatrist." She understood the letters PMS to stand for premenstrual syndrome. The sign remained on the bulletin board for approximately one week. Around this same time a coworker left various buttons in the computer room that had messages such as: "Too bad ignorance isn't painful," and "The difference between genius and stupidity is that EVEN genius has its limits."

On January 18, 1996, Moats changed the computer password to "PMS." Harris immediately complained to general foreman Bruce Wheeler. On January 23rd, GMP made the decision to transfer Harris from prototype back to the maintenance shop. On January 23rd or 24th Harris and a union representative met with Grove to complain about the password and the overall hostile working environment in the prototype work area. On January 26th the offensive password was removed. On January 28, 1996, Harris was transferred from prototype.

In February and early March 1996, the UAW filed a series of grievances on Harris' behalf challenging her transfer from prototype and alleging sexual harassment and a hostile work environment. In February 1997, UAW and GMP reached a settlement resolving Harris' overtime grievances. The settlement agreement awarded Harris 140 hours pay amounting to approximately $2900, and recognized that GMP had not discriminated against Harris. Harris appealed the settlement, and in June 1997 filed this Title VII action.

We review an award of summary judgment de novo. See Higgins v. E. I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Although summary judgment disposition should be used sparingly in employment discrimination cases, it is appropriate when there is no genuine dispute of material fact. See Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004-05 (4th Cir. 1987).

Initially, we agree with Harris that the settlement between the UAW and GMP addressing her claims of overtime disparity does not

foreclose her from reasserting the claims in this action. This court is bound to enforce any legally negotiated arbitration clause that obligates parties to submit claims under Title VII to arbitration. See Brown v. T.W.A., 127 F.3d 337, 340 (4th Cir. 1997). This rule applies to the arbitration provisions of a collective bargaining agreement. See Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875, 885 (4th Cir. 1996). However, an employee's contractual rights under a collective bargaining agreement are distinct from an employee's statutory Title VII rights. See Brown, 127 F.3d at 340; see also Alexander v. Gardner-Denver Co., 415 U.S. 36, 49-50 (1974). Therefore, even if a collective bargaining agreement dictates arbitration as the exclusive remedy to resolve claims that the contract has been applied unfairly on the basis of a protected statutory classification, an employee may still bring an independent Title VII action based on the same facts if the collective bargaining agreement does not provide for arbitration as the exclusive remedy to resolve an employee's statutory Title VII rights. See Alexander, 425 U.S. at 53-54; see also Brown, 127 F.3d at 341-42. Moreover, a union-negotiated waiver of the right to pursue statutory claims in a federal forum must be "particularly clear." Wright v. Universal Maritime Serv. Corp., 119 S.Ct. 391 (1998).

Although the labor agreement at issue in this case prohibits conduct similar to that protected by Title VII, it states only that "the provisions of this Agreement" will be applied without discrimination based on sex. The agreement does not purport to submit any noncontract-based dispute or any statutory dispute to arbitration. Brown, 127 F.3d at 341. In addition, the agreement states that "[t]he grievance and arbitration procedure shall be the exclusive contractual procedure for remedying such discrimination claims." This language further suggests that the agreement does not bar an employee from bringing an action in federal court to enforce the full scope of her statutory rights. Accordingly, Harris' Title VII claims were properly before the district court.

Harris asserts that GMP denied her overtime when she worked in prototype from September 1995 through January 1996 and that as a result of her transfer from prototype and a job restructuring that occurred in June 1996 she was further denied overtime opportunities. In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-04 (1973),

the Supreme Court established the familiar "order and allocation of proof" for Title VII cases in which the plaintiff alleges disparate treatment. First, the plaintiff must establish a prima facie case of discrimination. Id. at 802. To establish a prima facie case, Harris must demonstrate that (1) she belongs to a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) she was treated differently from similarly situated employees. Id. Once a prima facie case is presented, the defendant must then articulate some legitimate nondiscriminatory reason for the disparate treatment. Id. The articulated nondiscriminatory explanation is "presumptively valid," and the plaintiff must then demonstrate that the explanation is pretextual and "meet the ultimate burden of proving intentional discrimination" by a preponderance of the evidence. Moore v. City of Charlotte, 754 F.2d 1100, 1106 (4th Cir. 1985). The burden of proof never shifts from the plaintiff in a Title VII case. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993).

We find that Harris has failed to carry her ultimate burden of proving that gender discrimination played a role in GMP's decisions affecting overtime. Harris offers no evidence other than the "PMS" password incident and the "PMS" sign in support of her claims that any denial of overtime was gender based. It is undisputed that GMP awarded Moats and Knight more overtime opportunities than Harris from September 1995 through January 1996. During this period, however, Harris' fellow second-shift worker Phil Morton was also denied overtime, thereby calling into question Harris' assertion that the decision to give the first shift more overtime was gender based. In addition, GMP put forth unrefuted business reasons documenting the impracticability of equalizing the amount of overtime between shifts within the prototype equalization group. Finally, the record contains no evidence other than Harris' bare assertion that the June 1996 restructuring, which presumably affected not only Harris but her fellow prototype coworkers, was motivated by an intent to discriminate against Harris because she was a woman.*

_____
*In her brief Harris alleges she was unfairly denied overtime during her temporary transfer back to prototype in March 1996. However, this incident was not cited in Harris' complaint and first appeared in her affidavit accompanying her opposition motion to Defendant's motion for

5

Unfortunately for Harris, although the record suggests that GMP made efforts to satisfy Moats' and Knight's requests for more overtime, it is devoid of evidence showing that Harris' gender was a factor affecting GMP's personnel actions. The two sexually offensive incidents Harris cites in support of her claim that gender discrimination played a role in GMP's award of overtime opportunities do not enable Harris to meet her ultimate burden of proving intentional discrimination in violation of Title VII.

Harris next claims that her transfer from prototype was in retaliation for her complaints about sexual harassment and a hostile work environment. To establish a prima facie case of retaliation Harris must show: (1) that she engaged in protected activity or opposed a practice made unlawful by Title VII, (2) that the employer took adverse employment actions against her, and (3) that there was a causal connection between the protected activity and the adverse action. See Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985). Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions. See Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (en banc). The alleged adverse employment actions must be a "material[ ] adverse change in the terms and conditions of employment [and] must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993).

Harris' placement in prototype merely constituted a new job assignment, and she did not sustain a demotion or pay cut as a result of her transfer back to the maintenance department. Therefore, we find that Harris' transfer did not give rise to the level of adverse employment actions made actionable under Title VII.

_____

summary judgment. The record contains no evidence surrounding the details of this allegation, and Harris failed to allege in her affidavit that the lack of overtime available to her during this period was a product of gender discrimination. Therefore, this claim cannot withstand Defendant's motion for summary judgment.

6

Sexual harassment which creates a hostile work environment is actionable under Title VII because it amounts to discrimination in the conditions of employment. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 63-68 (1986). To establish her hostile work environment claim, Harris must prove that: (1) the conduct in question was unwelcome; (2) the harassment was based on sex; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) there is some basis for imposing liability on the employer. See Swentek v. USAir, Inc., 830 F.2d 552, 557 (4th Cir. 1987). Harassment is actionable only if it is so severe or pervasive so as to "alter the conditions of [the victim's] employment and create an abusive working environment." Vinson, 477 U.S. at 67 (internal quotation marks omitted) (alteration in original). In order to determine whether sexually offensive conduct was sufficiently severe or pervasive to bring it within Title VII's purview, we examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 22.

The conduct Harris cites in support of her hostile work environment claim is the placement in the computer room of various buttons and a makeshift sign with the words "PMS," and the alteration of the computer password to "PMS." Both the sign and the password remained for approximately one week. The buttons had no sexual connotations, and until the other incidents, Harris did not even believe that they were directed at her. Although these events offended Harris and delayed her ability to perform certain job functions, we agree with the district court that they were not severe or pervasive enough to state a viable claim under Title VII.

We therefore affirm the district court's order granting Defendants summary judgment on Harris' Title VII claims and deny her motion for summary reversal or remand. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7