Trevor STAFF, Plaintiff–Counter–Defendant–Appellant,

v.

THE PALL CORPORATION, Tom Gsell, in his official and individual capacities, Eric Krasnoff, in his official and individual capacities, Rich Salinaro, in his official and individual capacities, Joseph Zanetti, in his official and individual capacities, John Sipsas, in his official and individual capacities, Chuck Duthie, each in their official and individual capacities, Pat Lowy, indivdual, in official capacities. Defendants–Counter–Claimants–Appellees.

No. 03–7002.

United States Court of Appeals, Second Circuit.

Sept. 4, 2003.

---

Trevor Staff, Yonkers, NY, pro se.

Domenique Camacho Moran (David I. Rosen, on the brief), Littler Mendelson, P.C., New York, NY, for Defendants–Counter–Claimants–Appellees.

PRESENT: MINER, STRAUB, and WESLEY, Circuit Judges.

### SUMMARY ORDER

Plaintiff–Counter–Defendant–Appellant Trevor Staff ("Staff"), *pro se,* appeals from the November 18, 2002 judgment of the United States District Court for the Southern District of New York (Richard M. Berman, *Judge*) adopting the Report and Recommendation of Magistrate Judge Theodore H. Katz, dated October 17, 2002, and granting summary judgment in favor of Defendants–Counter–Claimants–Appellees on Staff's claims of discrimination.

Staff, a black male born in Jamaica, filed this action against his former employer, Pall Corporation ("Pall") and individually named Defendants–Counter–Claimants–Appellees (collectively, "Appellees") on February 3, 1999. Staff alleges, among other things, that, on the basis of race, color and national origin, Appellees discriminated and retaliated against him, and subjected him to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* 42 U.S.C. § 1981, and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et. seq.*

On October 17, 2002, Magistrate Judge Theodore H. Katz, to whom the matter had been referred, issued a Report and Recommendation ("Report") recommending that Appellees' motion for summary judgment be granted. Staff, through counsel, filed objections to the Report. The District Court adopted the Report in all respects.

Staff raises only two issues on appeal. First, Staff argues that the Report said that a project known as the "20 NM Project" was transferred from him to another employee in 1996, when in fact the transfer of the project occurred in 1997. Thus, according to Staff, his Title VII claim based on this event was timely. Second, Staff argues that his transfer in February 1998 from the R & D Department to the Manufacturing Engineering Department resulted in a change in his title and his job duties. Essentially, Staff argues that his transfer constituted an adverse employment action and that he has therefore established a prima facie case of disparate treatment under Title VII.

■ In his objections to the Report filed with the District Court, Staff did not assert that the Report erred in stating that the 20 NM Project was transferred to another employee in 1996. In fact, Staff's objections did not even mention the 20 NM Project. In this Circuit, "failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial

review of the decision, as long as the parties receive clear notice of the consequences of their failure to object." *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997). The Report informed Staff that "[f]ailure to file objections will result in a waiver of those objections for purposes of appeal." Thus, Staff has waived any arguments relating to his removal from the 20 NM Project.*

■ Staff's claim that his transfer from the R & D Department to the Manufacturing Engineering Department constituted discrimination fails on the merits. To establish a prima facie case of disparate treatment under Title VII "a plaintiff must show, *inter alia,* that she was subjected to adverse employment action, under circumstances giving rise to an inference of prohibited discrimination." *Fitzgerald v. Henderson,* 251 F.3d 345, 356 (2d Cir. 2001).**

The Report concluded that Staff's transfer to the Manufacturing Engineering Department was not an adverse employment action because Staff did not suffer a decrease in salary or fringe benefits, his duties remained largely unchanged, and he failed to offer any evidence other than his own "conclusory opinion" to support the contention that the transfer was tantamount to a demotion and had detrimental effects on his career. The District Court adopted the Report, holding that Staff failed to establish a prima facie case of discrimination with respect to the transfer.

We review a district court's grant of summary judgment *de novo. See Maguire v. Citicorp Retail Servs., Inc.,* 147 F.3d 232, 235 (2d Cir.1998). "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y. City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (citations omitted). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Crady v. Liberty Nat'l Bank and Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993)). "'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ...

---

* In any event, even taking as true Staff's statement that he was removed from the 20 NM Project in 1997 instead of 1996, Staff's Title VII claim based on this removal would still not be timely. Staff had at most 300 days after the alleged unlawful employment practice occurred to file an employment discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). *See* 42 U.S.C. § 2000e–5(e)(1). Staff filed his complaint with the EEOC on November 25, 1998. Thus, even if Staff's removal from the 20 NM Project occurred at the end of 1997, it would still be time-barred. Staff asserts in his reply brief that other employees consulted with him about the 20 NM Project until the summer of 1998 and thus his claim regarding his removal from this project is not time-barred. This argument fails. A claim based on a discrete act of alleged discrimination, such as a trans-

fer, must be filed with the EEOC within 300 days after the act occurred. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The event that Staff complains about is the fact that his supervisor took him off the 20NM Project and gave it to an employee named Terbancea. This event, Staff asserts in his brief, occurred in 1997.

** Claims under § 1981 are analyzed under the same framework as claims brought pursuant to Title VII, *see McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir.1997), and New York courts apply similar standards as those applied by Federal courts in assessing discrimination claims under the New York State Human Rights Law, *see Smith v. Xerox Corp.,* 196 F.3d 358, 363 n. 1 (2d Cir.1999).

unique to a particular situation.'" *Id.* (quoting *Crady,* 993 F.2d at 136).

The Report stated that "[t]he record indicates that the R & D and Manufacturing Engineering Departments were simply organized differently, and that the titles were distinct in name only, not in substance." According to the Report, Staff failed to offer any evidence "other than his own conclusory opinion" that the change in title had a detrimental effect on his career. In this appeal, Staff claims that when he was transferred from the R & D Department to the Manufacturing and Engineering Department he was told that he would keep the title Project Manager. However, he later found out that his title had been changed to Mechanical Engineer. According to Staff, the title Project Manager was "Middle Management" whereas Mechanical Engineer was an "entry level title." *** Staff complains of his change in title, but fails here, as he did below, to point to any evidence showing that he was actually demoted.

In his reply brief, Staff disputes Appellees' claim that his job duties remained the same after he was transferred to the Manufacturing and Engineering Department. Staff says that he did not continue to supervise "PVM semi-works operations" after the transfer. However, the Report and the District Court did not rely on the fact that Staff continued to supervise PVM semi-works operations. Rather, in holding that Staff's duties remained largely unchanged after the transfer, the Report quoted Staff's own affidavit, in which he stated that after the transfer he continued to oversee PVM production and performed other duties with respect to PVM membranes.

Staff claims that Appellees misled the Magistrate Judge by asserting that Staff's transfer was similar to the transfers of three white employees who were transferred at the same time. According to Staff, two of these employees, Duthie and Bhulk, were promoted and a third, Miklashewsky, was transferred laterally. Thus, according to Staff, he was the only one to suffer a "loss." However, the Report points to the transfer of these employees in its discussion of whether Pall's explanation for Staff's transfer to the Manufacturing and Engineering Department— the fact that the company was restructuring and changing the focus of the R & D Department—was a pretext for racial discrimination. The Report noted that the three white employees were transferred from R & D to Manufacturing and Engineering for essentially the same reasons as Staff. Thus, the Report did not state that the three white employees were transferred to positions with the same job title as Staff, but rather pointed to the transfers as evidence that the reason Pall offered for Staff's transfer was not merely pretext.

Furthermore, even if Staff could establish that his transfer constituted an adverse employment action, he has put forth no evidence that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 204 (2d Cir.1995). In addition, Staff has failed to rebut Pall's nondiscriminatory explanation for its decision to transfer him by showing that the proffered reason was pretext for discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

---

*** Staff asserts that the change in status was analogous to being a Lieutenant in the Air Force who was offered a lateral transfer to the Marines, and then found out that he was a Private, and "all the badges" that were earned in the Air Force were "stripped over night without just cause."

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.