**Michelle MONTEAGUDO, Plaintiffs**

**v.**

**ASOCIACION DE EMPLEADOS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, Defendants.**

**Civil No. 03–2357 (JAG).**

United States District Court, D. Puerto Rico.

March 31, 2006.

Carlos M. Vergne–Vargas, Carlos M. Vergne Law Office, Juan R. Gonzalez–Munoz, Vanesa Vicens, Gonzalez Munoz Law Office, San Juan, PR, for Plaintiffs.

Jorge Martinez–Luciano, Pedro Ortiz Alvarez Law Offices, Ponce, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court are the objections of Defendant Asociación De Empleados Del Estado Libre Asociado De Puerto Rico ("AEELA") (Docket No. 53) to United States Magistrate Judge Aida M. Del-

gado–Colón's Report and Recommendation (Docket No. 51), recommending that Defendant's Motion for Summary Judgment be granted in part and denied in part. After reviewing the Magistrate's findings, as well as Plaintiff's response to Defendant's objections (Docket No. 57) and Defendant's reply to Plaintiff's opposition to Defendant's objections (Docket No. 58), the Court ADOPTS the Report and Recommendation in part and REJECTS it in part. Specifically, the Court ADOPTS the Magistrate–Judge's recommendation regarding the hostile work environment issue and consequently the recommendation regarding the state supplemental claims under Puerto Rico Law 100 and Law 69, but REJECTS the Magistrate–Judge's recommendation regarding the retaliation issue. Additionally, the Court ADOPTS the Magistrate–Judge's recommendations regarding the issue of quid pro quo harassment and the claim under Puerto Rico Law 115, since these recommendations were not objected to by Plaintiff. Accordingly, the Court **GRANTS** in part and **DENIES** in part the Defendant's motion for summary judgment (Docket No. 26).

## FACTUAL BACKGROUND[1]

Plaintiff Michelle Monteagudo ("Monteagudo") was hired by AEELA on August 18, 1999, and held a number of temporary positions until October 2, 2000, when she was appointed to the tenured position of secretary. At that time, she received a copy of AEELA's Administrative Order Number 96–01 ("Order 96–01") which delineates the sexual harassment policy of AEELA. While she was a secretary at AEELA, the Compensation and Fringe Benefits Supervisor Juan Francisco Arce ("Arce"), began a pattern of sexual harassment consisting of unwelcome sexual ad-

1. The relevant facts are taken from the Report and Recommendation (Docket No. 51) and the documents that form part of the Summary Judgment record.

vances, innuendos and unauthorized physical contacts. Monteagudo made it clear to Arce that his conduct was unwelcome and asked him to stop, but Arce persisted in his behavior. Monteagudo also endured unwanted advances by Arce after working hours, when employees gathered at a nearby business establishment for drinks. At one point, AEELA's Director of Human Resources, Mr. Orlando Vargas ("Vargas"), who was friends with Arce, insinuated that he, Monteagudo, Arce and another female employee at AEELA should go out.

Monteagudo was assigned many tasks by Arce. She complained about the situation to AEELA's Director of Human Resources, Mr. Orlando Vargas ("Vargas"), her direct supervisor. She told Vargas that she was receiving too much work from Arce and that her own work was getting delayed. Monteagudo also asked Vargas why she was being assigned the additional tasks and he answered that he had authorized Arce to do so. The additional work was assigned without additional compensation and although Monteagudo requested a salary increase for the additional work, none was granted. At one point, when Monteagudo informed Vargas that she was going to meet with the president of the Union she belonged to, Vargas threatened Monteagudo with discharge if she filed any grievance or discriminatory charge. The situation at work deteriorated to intolerable levels and Monteagudo was left with no other alternative other than to resign.

Monteagudo authored a resignation letter dated December 5, 2002 and submitted the letter to Pablo Crespo–Claudio, Executive Director of AEELA, with a copy to Vargas. Monteagudo stated in her resignation letter that she was resigning her position with AEELA because she had received an opportunity for professional improvement. She testified at her deposition that this was not true and clarified that at the time, although she had no employment offer, she made the statement because she did not want to leave a bad impression that might hinder her possibilities of obtaining an employment reference in the near future. The resignation letter contains no mention of sexual harassment.

When Monteagudo resigned, she did not file a complaint with AEELA or the Union. Monteagudo explained that she did not do so because of Vargas's threat of dismissal. Monteagudo did not file a complaint with either institution after she had resigned, however. Indeed, Monteagudo acknowledges that she did not file a complaint with the AEELA, the EEOC or the Court until after she resigned from AEELA. A complaint was not filed with the Union she belongs to because according to the collective bargaining agreement ("CBA"), which forbids discrimination on account of gender and sets forth a grievance procedure, a complaint may only be filed by current employees. Monteagudo explained that she did not file a complaint with a representative of AEELA because she incorrectly believed it would have to go through Vargas. AEELA's sexual harassment policy, contained in Order 96–01, states that a complaint shall be filed with the Human Resources Director and that whenever the alleged harasser is the Human Resources Director and/or anybody close to said officer, the complaint shall be filed with the Executive Director of AEELA. Monteagudo testified and admitted during her deposition that she knew the person to complain to was the Director of Human Resources, but acknowledged knowing that he was a very good friend of the person who was subjecting her to the harassing conduct. Monteagudo did not complain to the Executive Director of AEELA. With regards to the Union, nothing in the CBA required a complaining union member to make a complaint through the Human Resources Director of the AEELA. Although Mon-

teagudo never received a copy of the CBA for the period from 2002 to 2005, she admitted that a co-worker had provided her with a copy of a previously adopted CBA.

## DISCUSSION

### A. Standard for Reviewing a Magistrate–Judge's Report and Recommendation

A district court may, on its own motion, refer a pending matter to a United States Magistrate–Judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Rule 503, Local Rules, District of Puerto Rico. Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 510.2, the adversely affected party may contest the report and recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. 28 U.S.C. § 636(b)(1). The Court must then make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. *See United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Lopez v. Chater*, 8 F.Supp.2d 152, 154 (D.P.R. 1998). The Court may accept, reject or modify, in whole or in part, the Magistrate–Judge's recommendations. "Failure to raise objections to the Report and Recommendation waives [that] party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992) (citations omitted).

### B. Standard for Motion for Summary Judgment

Summary judgment is appropriate when the evidence before the court shows that "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c)." *Seaboard Sur. Co. v. Greenfield Middle Sch. Bldg. Comm.*, 370 F.3d 215, 218 (1st Cir.2004). An issue is genuine for purposes of summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and a material fact is one which "might affect the outcome of the suit under the governing law." *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90 (1st Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party bears the initial responsibility of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party then bears the burden of "producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Mulvihill v. Top–Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir.2003). Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vázquez v. López–Rosario*, 134 F.3d 28, 33 (1st Cir.1998). "The mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S.Ct. 2505. Notwithstanding, when ruling on a motion of summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences". *Cox v. Hainey*, 391 F.3d 25, 27 (1st Cir.2004). While carrying out that task, the Court safely can ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000)(quoting *Medina–Muñoz*

*v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)).

### C. Title VII Claim

 Monteagudo alleges violation of Title VII of the Civil Rights Act of 1964 in the form of hostile work environment, retaliation and constructive discharge. AEELA moves for summary judgment on the basis that no relief is warranted under Title VII. More particularly, AEELA relies upon *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004) and asserts the Ellerth–Faragher affirmative defense, alleging that Monteagudo unreasonably failed to take advantage of any preventive or corrective opportunities provided by AEELA to avoid harm. Title VII prohibits employers from discriminating against an individual with respect to her employment on the basis of her sex. 42 U.S.C. § 2000e–2(a)(1). The scope of Title VII's prohibition of discrimination "because of ... sex" "is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (citations and some internal quotation marks omitted). Thus, discrimination "because of ... sex" includes "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Id.* (citations and internal quotation marks omitted). The Supreme Court has outlined the tests a plaintiff must meet to succeed in a hostile work environment claim as follows: "(1) that she is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established." *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–89, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65–73, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

### D. Defendant's Objections to the Report and Recommendation

#### 1. Retaliation Claim

 AEELA objects to the Magistrate–Judge's recommendation that the Court deny Summary Judgment on the issue of retaliation, contending that the Magistrate–Judge incurred in error in determining that the summary judgment record established that Monteagudo complained of sexual harassment. This error, AEELA argues, led the Magistrate–Judge to incorrectly conclude that Monteagudo had engaged in protected conduct. For the reasons discussed below, the Court finds

that the Magistrate–Judge did indeed incur in the indicated error.

A retaliation claim is covered by Title VII pursuant to 42 U.S.C. § 2000e–3(a). Said subsection provides in relevant part that:

[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

■■ Under *McDonnell Douglas,* the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The elements of *prima facie* proof vary with the nature of the discrimination claim. *Id.* at 803 n. 13, 93 S.Ct. 1817. Under a retaliation claim, in order for a plaintiff to make a *prima facie* case, he must show that "(1) [h]e engaged in protected conduct under Title VII; (2) he suffered an adverse employment action; and (3) the adverse action is causally connected to the protected activity." *Hernández–Torres v. Intercontinental Trading, Inc.,* 158 F.3d at 46. Protected activities in regards to a retaliation claim consist of either opposing an act of discrimination made unlawful by Title VII or participating in an investigation under Title VII. 42 U.S.C. § 2000e–3(a); *See Hunt v. Nebraska Public Power Dist.,* 282 F.3d 1021 (8th Cir.2002). In this case, the plaintiff failed to make the *prima facie* showing that she engaged in protected conduct.

Monteagudo claims that the act of retaliation by AAELA against her was the assignment of excess work by Arce and the threat of discharge by Vargas. The Magistrate–Judge found that these actions were unlawful retaliation in response to Monteagudo's protected activity of complaining to about sexual harassment. This complaint, however, never took place. Monteagudo alleges in her complaint that she "went to the Human Resources Department and complained to its Director, Orlando Vargas." This allegation is preceded by the allegation that "[d]espite Monteagudo's warnings to Arce, he did not stop in his unlawful behavior." It could be reasonably inferred that Monteagudo alleges that she complained to Vargas about Arce's unlawful behavior: making unwanted sexual advances. This allegation, however, is not supported by any evidence on the record. Monteagudo's deposition states that she limited her complaint to Vargas to the workload she was receiving from Arce (*See* Docket No. 39, Exhibit 2, pages 44–45). Moreover, in response to AAELA's argument that Monteagudo did not engage in protected conduct because she did not complain to Vargas about sexual harassment, Monteagudo restates uncontested facts which do not include any complaint by her to Vargas about sexual harassment specifically.

■ Monteagudo argues she did engage in protected conduct when she rejected Arce's sexual advances, stating that said rejection "is a clear example of the opposition conduct protected by Title VII." In support of her allegation, Monteagudo cites to two First Circuit decisions, *Che v. Massachusetts Bay Transp. Authority,* 342 F.3d 31 (1st Cir.2003) and *Hernández– Torres v. Intercontinental Trading, Inc.,* 158 F.3d 43 (1st Cir.1998). These cases, however, do not deal with the issue of whether the rejection of unwanted sexual advances constitutes protected conduct under Title VII. Neither the First Circuit, nor any other circuit, has ruled on whether

resisting an employer's sexual advances constitutes protected activity for purposes of establishing retaliation. *See Little v. National Broadcasting Company, Inc.,* 210 F.Supp.2d 330 (S.D.N.Y.,2002). Monteagudo provides no legal authority for the proposition that the rejection of unwanted sexual advances constitutes a protected activity under Title VII for purposes of retaliation, failing to prove her contention that her actions are a "clear example of the opposition conduct protected by Title VII." Accordingly, Monteagudo has not met her initial burden to establish a *prima facie* showing that she engaged in protected conduct with regards to her retaliation claim.

## 2. *The Faragher–Ellerth Defense*

■ The Defendant objects to the Magistrate–Judge's recommendation that the Court deny Summary Judgment on the issue of sexual harassment, arguing that the Magistrate–Judge incurred in error in finding that "there remains a question of fact whether a supervisor's official act (in the form of excessive and onerous assignments to Monteagudo and no other employee), caused a tangible employment action" which makes the Faragher–Ellerth defense unavailable to AAELA. For the reasons discussed below, the Court finds that the Magistrate–Judge did not incur in the indicated error.

■ The United States Supreme Court has held that the Faragher–Ellerth defense is available under certain circumstances in Title VII cases. In *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the Supreme Court distinguished two types of hostile work environment claims: (1)

harassment by a supervisor that "culminates in a tangible employment action," for which employers are strictly liable and (2) harassment that takes place in the absence of tangible employment action, to which employers may assert an affirmative defense. *Faragher,* 524 U.S. at 807–08, 118 S.Ct. 2275; *accord Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. A tangible employment action is "an official act of the enterprise, a company act."[2] *Ellerth,* 524 U.S. at 762, 118 S.Ct. 2257. When there is no tangible employment action, the employer may raise an affirmative defense to liability. The employer asserts the Faragher–Ellerth defense successfully when he proves two elements:

(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and
(b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *accord Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. The affirmative defense is not available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment. *Faragher,* 524 U.S. at 808, 118 S.Ct. 2275; *accord Ellerth,* 524 U.S. at 762–63, 118 S.Ct. 2257.

■ The Faragher–Ellerth defense is applicable to constructive discharge cases. *See Pennsylvania State Police,* 542 U.S. at 143, 124 S.Ct. 2342. Yet, "[u]nlike an actual termination, which is always effected through an official act of the company, a constructive discharge need not be." *Id.* In the specific case of constructive

**2.** Title VII includes, in its definition of "employer," the employer's "agents." *See* 42 U.S.C. § 2000e(b).

discharge because of hostile work environment, "... an employer does not have recourse to the Ellerth–Faragher affirmative defense when a supervisor's official act precipitates the constructive discharge; absent such a 'tangible employment action,' however, the defense is available to the employer whose supervisors are charged with harassment." *Id.* at 140–141, 124 S.Ct. 2342. Therefore, the Faragher–Ellerth affirmative defense "will not be available to the employer ... if the plaintiff quits in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions." *Id.* at 133, 124 S.Ct. 2342. In cases where the claim is hostile-environment constructive discharge, the plaintiff "must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Id.* at 147, 124 S.Ct. 2342. It is, therefore, the plaintiff's burden to establish that there was a tangible employment action.

In this case, Monteagudo asserts that AEELA is vicariously liable for the gender-hostile work environment created by two supervisory officials at AEELA, Arce and Vargas. She contends that their conduct culminated in the tangible adverse employment action of her constructive discharge. Monteagudo refers to several acts which she contends constitute official actions. First, she was threatened with discharge by Vargas if she filed a complaint about Arce's sexual conduct towards her. Second, she alleges that in retaliation for opposing Arce's unwanted sexual advances she was overloaded with excess work. Finally, Monteagudo was subjected to Arce's stares, aggressive attitude and hostility. Monteagudo argues that she had two choices: remain at work under these conditions or file an internal charge of sexual harassment and be dismissed.

Monteagudo concludes that because there was a tangible employment action, AEELA is deprived of the benefit afforded by the Ellerth–Faragher defense. Conversely, AEELA argues that because "the record is completely devoid of any evidence of any official adverse employment action undertaken by AEELA (like reduction of compensation and/or benefits, unfavorable transfers, demotions, etc) against plaintiff," there was no tangible employment action on its part and it should be afforded the benefit of the Faragher–Eller defense.

A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257. In order to determine whether there was a tangible employment action in this case, we must consider whether any employment changes as alleged by Monteagudo are sufficient to constitute a significant change in her employment status. *Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 55 (1st Cir.2000)(reduction in responsibility or a change in the way that business is done, unaccompanied by diminution of salary or some other marked lessening of the quality of working conditions, does not constitute a constructive discharge.); *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir.1996)(reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims.); *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir.1987) (a temporary transfer that resulted in no pay or benefits reduction did not constitute an adverse employment action); *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 885 (7th Cir.

1989)(changes in duties or working conditions that cause no materially significant disadvantage are not actionable).

Monteagudo contends that she was the only employee that was given certain additional extra duties by Arce. During her deposition she testified that Arce assigned to her the additional tasks of filling out loan applications, employment information forms, retirement forms, medical insurance form, change cards and typing of his letters. When Monteagudo complained to Vargas that Arce was giving her too much work and her own work was getting delayed, Vargas told her that he had authorized Arce to give her the additional work. Even though Vargas was aware of Monteagudo's working conditions, he did nothing to remedy the situation. Consequently, Monteagudo was forced to continue working under said conditions. Notably, two supervisory individuals were involved in the assignment of additional tasks: the Director of Human Resources and the Supervisor of Compensation and Fringe Benefits.

AAELA argues that Monteagudo never testified that she was the only employee receiving additional tasks, but only that she was the only employee receiving particular tasks. Further, AAELA argues that Monteagudo testified that she only received the additional tasks once a month. The testimony of Monteagudo in her deposition is that some of the tasks she was assigned were given to her once a month (*See* Docket No.39, Exhibit 2, pages 43–44). This statement is unclear as to whether all of the additional tasks she was assigned were assigned once a month. Additionally, Monteagudo only testified that one of the additional tasks took her a full day to complete. *See Id.* Again, this statement is unclear as to whether all of the additional tasks took her one full day to complete or if they took her a longer or shorter amount of time. It is also unclear whether other employees were receiving additional tasks, even if different from those assigned to Monteagudo.

The circumstances surrounding the assignment of additional work duties could lead a reasonable fact-finder to conclude there was a tangible employment action. Therefore, there exists a genuine question of material fact as to whether the additional tasks assigned to Monteagudo were sufficiently excessive and onerous as to constitute a tangible employment action.

Monteagudo's other claims of official acts fail. Vargas's threat of dismissal is not a tangible employment action because she was never dismissed. "[U]nfulfilled threats" are not tangible employment actions. *Reed v. MBNA Mktg. Sys.*, 333 F.3d 27, 34 (1 st Cir.2003). Additionally, Arce's stares, aggressive attitude and hostility are not tangible employment actions because they are acts of intangible nature.

Since it has not been determined whether AAELA carried out a tangible employment action, there is no need to address the two elements of the Farager–Ellerth affirmative defense.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Summary Judgment on the issue of retaliation, the issue of quid pro quo harassment, and the claim under Puerto Rico Law 115, but **DENIES** Summary Judgment on the issue of the hostile work environment and the state supplemental claims under Puerto Rico Law 100 and Law 69. Accordingly, the Court **GRANTS** in part and **DENIES** in part the Defendant's motion for summary judgment.

IT IS SO ORDERED.